## STATE OF VERMONT

## ENVIRONMENTAL COURT

In re: Kowalski Subdivision
Preliminary Plat

Docket No. 50-3-07 Vtec

### Decision on Cross-Motions for Summary Judgment

This appeal arises out of a decision by the Marshfield Development Review Board ("DRB") to deny Wayne and Susan Kowalski's application for a Planned Residential Development ("PRD") and preliminary plat subdivision approval of their property on Maple Hill Road in Marshfield. Appellant-Applicants Wayne and Susan Kowalski are represented by Oliver L. Twombly, Esq. The Town of Marshfield ("Marshfield") is represented by Paul S. Gillies, Esq. and Daniel P. Richardson, Esq.

Applicants and the Town of Marshfield have filed cross-motions for summary judgment and supporting memoranda on all issues presented in Appellants' Statement of Questions.

For the purposes of our review of the pending motions, we understand the following facts to be undisputed unless otherwise noted.

### Factual Background

1. Wayne and Susan Kowalski own a 77± acre parcel of land located at 2798 Maple Hill Road in Marshfield that lies southwesterly of Maple Hill Road and northeasterly of the Marshfield-Plainfield town line ("Town Line"). Applicants Ex. B-1.

2. On September 22, 2006, the Kowalskis submitted an application for preliminary plat and PRD approval of a four-lot subdivision. Id. The application also contained a request for approval of two single family residences on a single lot as a PRD.[1] Applicants Ex. B-1.

3. Lot 1 of the proposed subdivision contains the Kowalskis' existing single family home and approximately 4.49 acres. Applicants Ex. B-2. It shares its easterly boundary with Lot 2; its

---

[1] At the time the application was submitted, the Marshfield Zoning Regulations recognized both PRD's and "Planned Unit Developments" ("PUD"). Appellee's Ex. 6 at 1 n.1; see also Appellee's Ex. 4 (containing selections from the Marshfield, Vermont Current Zoning Regulations) ("Zoning Regulations"). These Regulations have since been revised to reflect certain changes mandated by statute. The Regulations no longer contain a provision for PRDs. Appellee's Ex. 5; see also 24 V.S.A. § 4417(f) (containing no PRD provision). Our discussion here focuses on the pre-existing Regulations, since we are directed to apply the zoning standards in effect at the time the Kowalskis' application was filed, which was September 22, 2006. See In re Jolley Assocs., 2006 VT 132, ¶ 11 (citing Smith v. Winhall Planning Comm'n, 140 Vt. 178 (1981)).

northerly boundary is its frontage along Maple Hill Road. Marshfield Ex. 1. It shares its westerly boundary with Lot 4, which has not been surveyed and will be retained by Applicants. Applicants Ex. B-2. Lot 1 shares at least some of its southerly boundary with Lot 4.[2]

4. Lot 2 is the largest proposed lot; it contains approximately 30.43 acres. Id. It separates Lot 1 from Lot 3 in the northerly half of the proposed subdivision.

5. Lot 2 is located partly in the Marshfield Agricultural/Rural Residential Zoning District ("Ag/Res District") and partly in the Marshfield Forestry & Conservation Zoning District (F&C District"). Applicants Ex. B-2.

6. The Lot 2 northerly boundary runs along Maple Hill Road and its southerly boundary is the Town Line that Marshfield shares with the Town of Plainfield. Marshfield Ex. 1. The Lot 2 easterly boundary begins at its northerly corner on Maple Hill Road and proceeds along that right of way for about 622 feet. The Lot 2 boundary then proceeds southwesterly for approximately 360 feet along the westerly border of Lot 3. Id. This common boundary line then turns easterly for another 360 feet along the southern border of Lot 3. The Lot 2 boundary line then continues in a southwesterly direction for about 1,489 feet, along a former town road. Id.

7. This former town road is three rods or about 49.5 feet wide. The easterly boundaries of Lots 2 and 3 run along the center line of the former town road. Marshfield Ex. 1. Applicants' subdivision plan includes plans to grant a "perpetual right-of-way" for recreational purposes along this former town road.

8. Applicants and Marshfield differ regarding the length, orientation, and placement of the remainder of the Lot 2 boundaries. Applicants describe the southerly boundary of Lot 2 as extending just over 854 feet along the Town Line. Applicants Ex. B-2. Marshfield describes the same boundary as extending just over 718 feet. Marshfield Ex. 1.

9. Applicants describe the Lot 2 westerly boundary as extending just over 838 feet from its western most corner to the southerly boundary of Lot 1, from that point turning easterly for an undetermined distance, and then running in a northeasterly direction along the Lot 1 eastern boundary. Applicants Ex. B-2. Marshfield describes the same boundary as extending

---

[2] Marshfield Ex. 1 and Appellants Ex. B-2 depict Lot 2 in slightly different ways: Appellants Ex. B-2 shows that a portion of Lot 2 makes up the southerly boundary of Lot 1 while Marshfield Ex. 1 shows that all of the Lot 1 southerly boundary is shared with Lot 4. Although notable, this does not appear to be a material difference of fact.

over 875 feet from the western corner of Lot 2 and making no easterly turn before forming Lot 1's easterly boundary. Marshfield Ex. 1.[3]

10. Lot 2 contains two proposed house sites, both located near the eastern boundary of Lot 2, approximately halfway between the Town Line and the southerly boundary of Lot 3. Applicants Ex. B-2. These house sites and a majority of the acreage of Lot 2 are located in the F&C District. Marshfield Ex. 1 and Applicants Ex. B-2.

11. Applicants represented that they chose the Lot 2 house sites based upon the layout of the land. Marshfield Ex. 5. At a January 4, 2007 DRB meeting, Applicants represented that the only reasonable place to build on the Lot 2 site was the place selected within the F&C District, since the part of Lot 2 that sits in the Ag/Res District (estimated at less than 9 acres) is too wet to install a septic system. Marshfield Ex. 6 at 3.

12. Lot 3 is located in the northeasterly corner of the proposed subdivision and contains 2.65± acres. It is located wholly within the Ag/Res District. It shares its westerly and southerly boundaries with Lot 2. A portion of its northerly boundary runs along Maple Hill Road; Lot 3 abuts property described as "Lands now or formerly of Catherine Elwert." ("Elwert Lot").

13. The Elwert Lot, which abuts the northeasterly corner of Lot 3, has frontage on Maple Hill Road and contains an existing house. Applicants propose to convey their proposed Lot 3 to the Elwert Lot owners, so as to bring the Elwert Lot into conformance with minimum lot size requirements for the Ag/Res District. Marshfield Statement of Undisputed Facts at ¶ 5.

14. After a hearing on January 4, 2007, the DRB denied the Applicants' preliminary plat and PRD applications by written decision dated February 2, 2007. Marshfield Ex. 6. Applicants thereafter filed a timely appeal with this Court.

**Discussion**

Both parties have moved for summary judgment, which "is appropriate when the material facts are not in contest and the moving party is entitled to judgment as a matter of law." Hubbard v. Metro. Prop. And Cas. Ins. Co., 2007 VT 121, ¶ 6; see also V.R.C.P. 56(c)(3) ("Judgment shall be rendered forthwith if [the pleadings and other evidence] show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law"). In this de novo appeal, we are directed to apply the substantive standards that were

---

[3] These discrepancies do not appear to be material to our analysis here. In fact, each party's Exhibits appear to be photocopies of different drafts of site plans prepared by Brad M. Washburn, Applicants' certified site technician.

applicable before the DRB to see if either party is entitled to judgment as a matter of law. V.R.E.C.P. 5(g); 10 V.S.A. § 8504(h). However, before considering whether summary judgment is appropriate, we must consider whether we have jurisdiction to consider the issue raised in Applicants' Questions.

**Justiciability of Questions 1 and 3**

Applicants preserved 11 issues for our review in their Statement of Questions. Marshfield argues that we need not consider Questions 1 and 3 because these issues are either uncontested or immaterial to this appeal. Applicants contend that these Questions, which they characterize as relating to the creation and disposition of Lot 3, are integral to their subdivision plans and ought to be considered.

Question 1 asks whether the Zoning Regulations allow Applicants to subdivide their 77± acre parcel into four lots. The Town responds that it does not dispute that the Zoning Regulations allow Applicants to subdivide their property into four lots; the Town contends that the disputed issue here is whether the specific four-lot subdivision Applicants propose comports with the Zoning Regulations.

In short, the Town argues that this Question asks us to render an advisory opinion. We agree, at least in part. We lack authority to issue advisory opinions on hypothetical permitting questions. In re Appeal of 232511 Investments, Ltd., 2006 VT 27, ¶ 19, 179 Vt. 409, 417 (2006). To the extent Applicants' Question 1 asks whether there is any situation under which a four-lot subdivision or PRD would be permissible, we decline to give such an advisory opinion because that would be improper under 232511 Investments. However, this broadly phrased Question could be read to ask whether the present application is permissible under the subdivision and zoning regulations. We note that the remainder of the Questions in Applicants' Statement of Questions raise clear-cut issues specific to this application. To the extent that Question 1 is broadly duplicative of the more precise issues contained in the remaining Questions, we will address the specific issues in the context of the remaining Questions.

Question 3 asks whether the Zoning Regulations permit the Applicants to reserve Lot 3 and merge it with the Elwert Lot. The Town argues that "[the DRB] below did not rule that this portion of the application was not allowed or created any intrinsic problems . . ." and that the DRB "acknowledged that such a development alone would be permissible within the confines of the Town's zoning and subdivision regulations." Marshfield Mot. For Summ. J. at 2-3. In short, the Town argues that it does not dispute Applicants' ability to subdivide and transfer a portion of

their property to the owners of the Elwert Lot because the DRB "did not rule that this portion of the application was not allowed or created any intrinsic problems." Id. at 2. Applicants respond by arguing that the proposed merger of Lot 3 with the Elwert Lot requires approval of their entire application, and therefore is part of the controversy between the parties. We agree with the Applicants, in part. Although the DRB decision primarily discussed the PRD, and even mentioned that merging Lot 3 with the Elbert lot may be beneficial, it ultimately denied the entire application as outside the bounds of the existing Zoning Regulations. See Marshfield Ex. 6 at 1 ("Upon careful deliberation, the Marshfield [DRB] . . . finds that the proposal . . . is not consistent with the purpose of either [PRDs or PUDs.] Therefore, the DRB denies authorization . . . .")

In this regard, we note that we are charged with reviewing the application presented to us, not a mere portion of it and not a hypothetical amendment to it not yet presented by an applicant. See In re Jolley Assocs., 2006 VT 132, ¶ 9 (noting that, generally, the Environmental Court may only consider those issues contained in the original notice of appeal); see also Appeal of 232511 Investments, 2006 VT 27, at ¶ 19, 179 Vt. at 417 (disallowing consideration of hypothetical permits). We cannot say, as the Marshfield urges, that the issue raised in Question 3 is wholly undisputed, since Applicants have implicitly given notice that the merger of their proposed Lot 3 with the Elwert Lot is conditioned upon approval of their entire subdivision. We therefore decline to dismiss Question 3.

**Planned Residential Development**

As noted above, we are directed to apply the zoning standards that were in effect at the time the applicant submitted a complete application. Jolley Assocs., 2006 VT 132, at ¶ 11. Applicants here submitted their application on September 22, 2006; a copy of their application has been presented to the Court as Applicants Ex. B-1. Thus, the PRD provisions from the now former Zoning Regulation are applicable here. See supra, n.1. In addition, the enabling statute, former 24 V.S.A. § 4407(3) (2000) (repealed 2004), is applicable here. 24 V.S.A. § 4481; see also In re: Armour Siding Application, Docket No. 134-7-05 Vtec slip op. at 6, n.3 (Vt. Envtl. Ct. Dec. 18, 2006) (noting that § 4407 remains in effect with respect to provisions adopted before its amendment.).

Many of the issues raised in Applicants' Statement of Questions deal with the broad question of whether their application comports with Marshfield's PRD scheme. These questions specifically ask whether the Zoning Regulations permit Applicants to develop one of the four

lots for the construction of two new single family residences (Question 2); whether the subdivision application proposal is consistent with the purpose of either PRDs or PUDs (Question 4); whether the subdivision application proposal may be approved as a PRD or PUD under applicable municipal ordinances or state statutes (Question 5); whether the plan is approvable in that it would establish a residential use in the F&C District that would not be approvable without a PRD authorization (Question 6); whether the plan to convey Lot 3 to the owners of the Elwert Lot "further[s] the desirability [of the proposal] within the meaning of [applicable law]" (Question 7); whether the plan to grant a perpetual right-of-way along the former town road located easterly of the Elwert Lot and Lots 2 and 3 "render[s] [the proposal] as desirable for approval as a PRD or PUD within the meaning of [applicable law]" (Question 8); whether the application ought to be approved considering the advice of a state engineer that a portion of the land lying within the Ag/Res District is not suitable for any type of construction (Question 9); and whether the proposal is consistent with Marshfield's land use objectives as articulated in the Marshfield Town Plan (Question 10).

Each of these seven questions implicates one larger question: whether the proposed PRD comports with Marshfield's PRD scheme. See Jolley Assocs., 2006 VT 132, at ¶ 9 ("The literal phrasing of [the Statement of Questions] cannot practically be considered in isolation from the . . . action that prompted the appeal); see also In re: Hamm Mine Reclamation Act 250 Jurisdictional Opinion #2-241, Docket No. 271-11-06 Vtec slip op. at 8 (Vt. Envtl. Ct. Sept. 27, 2007) (consolidating multiple questions in a Statement of Questions where only a few issues are raised). The parties, through their cross-motions for summary judgment, have broken this global issue into three parts: (1) whether the application meets the procedural requirements of a PRD application; (2) whether the proposed project meets density requirements; (3) and whether the proposed project comports with the Marshfield Town Plan. We consider each of these issues in turn.

**Procedural Requirements**

The applicable Zoning Regulations require a PRD application to include several pieces of information. These include a site plan depicting the proposed PRD "with a preliminary subdivision application showing the location, height, and spacing of buildings, open spaces and their landscaping, streets, driveways, and off-street parking spaces, unique natural or manmade features, and physical conditions of the site . . . ." Zoning Regulations § 260. The application must also include "a statement setting forth the nature of all proposed modifications, changes, or

supplementations of existing zoning regulations." Id. These requirements are announced under the heading "Application Procedure," and are followed by a description of the Standards for Review to be followed by the DRB in the first instance and this Court in the event of an appeal. Id. The Town argues that Appellants' application is deficient, insisting that the application does not contain the necessary information regarding the height of proposed buildings, landscaping, driveways, off-street parking, and unique natural or manmade features.

Appellants submitted a subdivision site plan that indicates the location of their existing single family home, the two proposed house sites on Lot 2, the location of driveway that would serve the houses on Lot 2, the subdivision boundary lines, and some of the natural contours of the land. Appellants Ex. B-2. Mr. Kowalski represents through his affidavit that neither of the two proposed houses on Lot 2 will exceed 35 feet in height. Aff. of Wayne Kowalski at 1. Appellants' application indicates that the land not developed by this proposed project "will [be] conserved in [perpetuity] with requirements of ordinance," with "legal consideration" to be determined. Appellee's Ex. 2.

Although the application, site plans and Mr. Kowalski's affidavit do not provide great detail regarding Appellants' plans, we cannot say that the application is incomplete. In this regard, we note that while the evidence thus far submitted may be sufficient to deem an application complete and thus withstand a pre-trial dismissal motion, it may not be sufficient at trial, without more, to support a conclusion that Applicants have fulfilled their burden of persuading this Court that their proposed PRD and subdivision plans conform to the applicable Regulations. See In re: Rivers Dev. Conditional Use Appeal, Docket No. 7-1-05 Vtec slip op. at 10 (Vt. Envtl. Ct. Jan. 11, 2008) Therefore, we decline to render summary judgment in the Town's favor at this time on the issue of completeness of Appellants' application.

**Density Requirement**

The Marshfield PRD Regulations were enacted pursuant to former 24 V.S.A. § 4407(3). Zoning Regulations § 260. Under § 4407(3), the purpose of a PRD was to "enable and encourage flexibility of design and development of land in such a manner as to promote the most appropriate use of land, to facilitate the adequate and economical provision of streets and utilities, and to preserve the natural and scenic qualities of the open lands of the state." 24 V.S.A. § 4407(3) (2000) (repealed 2004). Section 4407(3) permitted a DRB or planning commission to modify zoning regulations simultaneously with the approval of a subdivision

plan, subject to five conditions. Id. One of these conditions related to increasing dwelling unit density limitations if authorized by the zoning bylaws. Id. at § 4407(3)(B).

Marshfield's PRD Regulations add several additional requirements to PRD approval. The Regulations require that "[t]he overall density of the project does not exceed . . . one unit per ten acres in the Forestry & Conservation District." Zoning Regulations § 260. Appellants argue that the density provision does not require that density be judged only based upon the acreage that lies within the F&C District, and suggest that the proper method of measurement should include all land within their proposed Lot 2, including that land outside of the F&C District.

We will construe zoning regulations and bylaws using the familiar canons of statutory construction, giving effect to the plain meaning of the regulation where a plain meaning is present, and avoiding absurd results and surplus language. See In re Casella Waste Management, 2003 VT 49, ¶6 (outlining construction of zoning regulations) and In re: Stowe Club Highlands, 164 Vt. 272, 279-80 (1995) (citations omitted).

The plain language of the Regulations indicates that only one unit may be allowed for every ten acres within the F&C District. We cannot accept the interpretation offered by Appellants that would allow us to consider land outside the F&C District. Such an interpretation is not within the plain meaning of the language in Zoning Regulations § 260. We will therefore consider whether the proposed project meets PRD density requirements considering only that land of Lot 2 within the F&C District.

In its motion, the Town advances a mathematical formula for calculating the area of Lot 2 within the F&C District. We commend the Town for its mathematical expertise, but are reluctant to rely upon acreage calculations that would result in a dismissal of Appellants' application, unless offered by an expert in the field and of a more exact result.

Moreover, even if the mathematical formula is appropriate here, the dimensions of Lot 2 appear to be in contest. As noted it our recitation above of the factual background, the parties have submitted site plan maps that do not agree regarding the placement, orientation and length of the Lot 2 dimensions. The dimensions of Lot 2 are material to the issue of whether the lot contains sufficient acreage for Appellants' proposed project. Appellants direct our attention to an affidavit by Mr. Brad Washburn, the Appellant-Applicants' surveyor, to support the assertion that the area that lies within the F&C District is at least 20 acres. However, our search of the record has not yielded this affidavit.

For these reasons, we conclude that it is not appropriate to enter summary judgment for either party on the issue of adequate acreage within the F&C District. Genuine issues of material fact remain regarding whether there is adequate acreage in the portion of Lot 2 that lies within the F&C District.

## Agreement with the Town Plan

In order to be approved, a PRD application must be "consistent with the goals of the Town Plan." Zoning Regulations § 260. In general, the "abstract intentions" of a Town Plan, while helpful in understanding a Town's goals and desires for future land use and development, may not have restrictive or regulatory effect, unless they are incorporated into zoning regulations and bylaws. See Houston v. Town of Waitsfield, 162 Vt. 476, 480 (1994) (citing Kalakowski v. John A. Russell Corp., 137 Vt. 219, 225-26 (1979)).

The Marshfield Town Plan has been incorporated into the Zoning Regulations so that any PRD modification of the Regulations must adhere to the goals of the Town Plan. Zoning Regulations § 260. As the Appellants correctly assert, a Town Plan alone has no regulatory effect. In re Appeal of Wesco, Inc., 2006 VT 52, ¶ 33 (noting that municipal plans are abstract and advisory). However, Marshfield has decided to incorporate the Town Plan into its Zoning Regulations by means of § 260, giving it regulatory effect. Therefore, we consider the Town Plan in our review to this PRD application.

The application proposes to place two new houses in Lot 2, with both houses situated in the F&C District. According to the Marshfield Town Plan, that District "contains the most important forestry resources and some of the most important natural areas in the town." Town Plan at 56.[4] The Town Plan asserts that "[b]ecause of the many natural/ecological resources . . . and physical limitations," including soils, slope, and topography, "within this district, even small scale, limited development can be problematic." Id. at 56–57. Addressing the Town's goals, the Plan announces that the F&C District should be devoted primarily to resource production, recreational and ecological uses, keeping prominent landscape features free or nearly free of visible development. Id. at 57. The Town Plan also asserts that "new development in this zone should be considered with great care, limited in scope, and closely monitored." Id. Regarding

---

[4] A copy of the Town Plan has been submitted as Marshfield Ex. 3

existing conditions in the F&C District, the Town Plan also announces the goal of addressing non-conforming uses, using the authority granted in 24 V.S.A. § 4414(7).[5] Id. at 59.

The Town argues that this PRD application cannot comply with the Town Plan and that this Court should therefore summarily deny the pending application, making a bench trial unnecessary. In support of its argument, the Town first asserts that Appellants' proposed PRD development would compromise the goals for this District announced in the Town Plan by reducing open, natural space, without providing an adequate benefit to the Town to justify the development. The Town also argues that this development does not fit the purposes expressed in the PRD Regulations, which is to promote design and development flexibility, while protecting important natural resources.

Determining consistency with a town plan often involves subjective determinations. Some may argue that a proposed development represents an improper encroachment on green spaces; others may argue that the same development represents a reasoned and appropriate use of the land. In re: Pierce Woods PRD and Subdivision Application, Docket No. 33-2-06 Vtec slip op. at 11 (Vt. Envtl. Ct. Feb. 28, 2007). However, the Town Plan and the Zoning Regulations relating to PRDs in this specific case provide clear instruction regarding development in the F&C District. The Town Plan, as discussed above, stresses the importance of non-development in the F&C District and the value of the natural resources in that District. Section 260 itself warns applicants to avoid environmentally sensitive areas in the design of PRDs and further speaks of safeguarding prime agricultural and forestry soils. Section 260 also notes that PRDs are intended to preserve open spaces and scenic vistas. Appellants have made provisions for the preservation of some open spaces on their property, such as providing a right-of-way along the former town road and providing private land use restrictions. However, their proposal to put two residences on one Lot in the F&C District is not consistent with Marshfield's strong and oft-stated goal of conserving these same forested lands. The PRD proposal would open a section of the F&C District to residential use, including the placement of a common drive within the District that would be used to access the two house sites. Although clustered together, we cannot see how the proposal to place two houses on Lot 2 conforms to any of the goals stated in the Town Plan, particularly the expressly stated goal of preserving the land in this District from this very type of development.

---

[5] The Town Plan refers to the present version of 24 V.S.A. § 4417, which enables municipalities to regulate and prohibit expansion and undue perpetuation of nonconformities.

We recognize that review of land use goals is often a subjective exercise and therefore not amenable to a determination on summary judgment. But we conclude that where, as here, proposed development is of a nature that the Town Plan seeks to protect the District against, we conclude that a trial is not necessary; nonconformance with the PRD Regulations and the sections of the Town Plan referenced therein is a necessary conclusion, even when viewing the materials facts in a light most favorable to Appellants. On the issue of conformance with the Zoning Regulations, we conclude that summary judgment against Appellants' proposed development is required.

**Question 3**

Appellants' Question 3, as we already discussed above, asks whether the Zoning Regulations permit their subdivision plan to reserve Lot 3 and merge it with the Elwert Lot. The Town represents that it "does not presently dispute [Appellants'] ability to subdivide and sell/give a portion of their land to a neighbor to bring his/her adjoining lot into conformance with existing zoning." Marshfield Mot. for Summ. J. at 3; see also Marshfield Statement of Undisputed Facts at ¶ 5 (stating that the Elwert Lot would conform to minimum size requirements after merger).

The Regulations governing preliminary subdivision review permit a deciding tribunal to approve a preliminary plan with modifications. Town of Marshfield Subdivision Regulations § 2020(C) ("Subdivision Regulations"). Here, the parties do not contest the issue of the subdivision and merger of Lot 3. While our prior determinations, expressed above, will result in the denial of Appellants' application, we believe it important and proper to note that no provision of the Subdivision Regulations prohibits that portion of Appellants' proposal that would result in the creation of Lot 3, including for the purpose of merging Lot 3 with the Elwert. While § 2020(C) authorizes this Court to approve a modified subdivision plan, allowing solely the creation of Lot 3, we decline to do so here unless and until Appellants specifically request such an approval of only a portion of their proposed subdivision.

**Question 11**

Appellants' Question 11 asks broadly whether the subdivision application conforms to the Zoning Regulations. For the reasons expressed above, we conclude that the PRD element of Appellants' application cannot be held to conform with the Zoning Regulations. We therefore conclude that a summary denial of Appellants' PRD proposal is appropriate. However,

Appellants' plan to subdivide their property remains. The parties, through their motions, have not thoroughly addressed the question of whether the subdivision alone of Appellants' property is allowed under the Subdivision Regulations, save for the uncontested creation and merger of Lot 3. Moreover, the parties have not submitted all materials related to the subdivision of the source lot, including complete copies of the applicable Zoning Regulations and a site plan that gives a complete description of the largest lot, Lot 4. For these reasons, summary judgment must be **DENIED** to both parties on the portion of Question 11 that asks whether the proposed subdivision alone is entitled to preliminary plat approval under the Zoning and Subdivision Regulations.

## CONCLUSION

For the forgoing reasons, summary judgment is **DENIED** to Appellants and **GRANTED** to the Town on Questions 2 and 4 through 10. Question 1 is **DISMISSED** as outside of our jurisdiction. Summary judgment is **DENIED** to the Town on Question 3. Summary judgment is **DENIED** to both parties on Question 11 on the issue of the conformance of Appellants' subdivision proposal with the Marshfield Subdivision Regulations, but is **GRANTED** to the Town on the issue of the inability of Appellants' PRD proposal to comply with the Marshfield Zoning Regulations.

Appellants are directed to notify the Court and the Town within thirty (30) days of this Decision (i.e.: no later than Friday, February 15, 2008) whether they wish to proceed to trial, solely on the remaining question of whether their proposed four lot subdivision should be approved. Such approval would only govern subdivision of their property, not development. See In re: Chipman Hill Estates PUD Amendment, Docket No. 39-2-06 Vtec, slip op. at 5–7 (Vt. Envtl. Ct. May 15, 2006) (aff'd sub nom. In re Appeal of Baker and Johns, Docket No. 2006-364 (Vt. Sup. Ct. May 5, 2007)). Absent notification from Appellants that they wish to proceed solely with their request for preliminary plat subdivision approval, this Court will thereafter issue its Judgment Order, thereby concluding the current proceedings before this Court.

Done at Berlin, Vermont this 16th day of January, 2008.

_____
Thomas S. Durkin, Environmental Judge