STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| In re Sisters & Brothers Investment Group, LLP | } | Docket No. 106-5-06 Vtec |
| (Colchester Site Plan Application) | } | |
| | } | |

## Merits Decision

Sisters & Brothers Investment Group, LLP ("SBI") wishes to develop its property at 883–865 College Parkway in Colchester with a convenience store that includes gasoline pumps under a free-standing canopy. To pursue this development goal, SBI first sought a municipal use permit in 2002 and thereafter sought site plan approval in 2005, which was granted by the Town of Colchester Development Review Board. SBI filed an appeal of the conditional site plan approval, and abutting[1] property owner Cumberland Farms, Inc. ("Cumberland Farms") filed a timely cross-appeal. These appeals require this Court to make certain determinations regarding SBI's municipal site plan application.

After it addressed certain legal issues raised by the parties' pre-trial motions, the Court conducted a site visit and a day-long merits hearing. SBI has been assisted in this proceeding by its attorney, David H. Greenberg, Esq.; Cumberland Farms is represented by Jon T. Anderson, Esq. and David W. Rugh, Esq.; the Town is represented by Richard C. Whittlesey, Esq.; and Interested Person Fanny Allen Corporation represents itself, through the Chair of its Board of Directors, Sister Irene Duchesneau.

Based upon the evidence admitted at trial, including that put into context by the site visit, the Court has made the Findings of Fact and Conclusions of Law itemized in the sections of this Decision that follow. But first, we believe that a brief recitation of the procedural history of SBI's municipal applications will help provide needed context for the Court's Findings and Conclusions.

---

[1] Cumberland Farms owns property that abuts other parcels owned by SBI; these SBI parcels abut the lands SBI proposes to develop.

## Procedural History

SBI's first application sought approval for the use of its property as a convenience store with gasoline sales. This use application was initially denied by the Town of Colchester Development Review Board ("DRB") on November 13, 2002. SBI thereafter filed a timely appeal of the DRB's denial of SBI's use application; that appeal was assigned Docket No. 281-12-02 Vtec.

This Court ultimately determined that SBI's proposed development could not be defined as either a permitted or conditional use and therefore also denied SBI's use application. In re: Appeal of Sisters and Bros. Inv. Group, LLP, Docket No. 281-12-02 Vtec (Vt. Envtl. Ct. Oct. 11, 2004) (J. Wright). SBI thereafter appealed this Court's use determination to the Vermont Supreme Court, which reversed that determination and held that SBI's proposed 3,600 square foot convenience store with gasoline sales should be regarded as a permitted use under the Town of Colchester Zoning Regulations in effect at the time of SBI's 2002 use application. In re Appeal of Sisters and Bros. Inv. Group, LLP, No. 2004-495, slip op. at 3–4 (Vt. Sup. Ct. May 5, 2005) (unpublished mem.). In announcing its decision, the Supreme Court noted that, while "the Town has now rewritten the definition of convenience store[s that are allowed in this zoning district, such that a store with gasoline sales would no longer be a permitted use,] . . . [t]his case is governed by the regulations existing at the time, however, and the Table of Permissible Uses allows SBI to put its Colchester property to use as a convenience store with gasoline pumps." Id.

The Supreme Court's 2005 decision did not, however, mark the conclusion of the municipal permit review for SBI's development plans. The Town of Colchester Zoning Regulations, both before and after their amendment in 2005,[2] required site plan approval for developments such as SBI's proposal for its College Highway property. So, on November 14, 2005, about one month after the enactment date for the 2005 Amended Regulations, SBI submitted a municipal site plan application. The DRB considered SBI's site plan application at several hearings and deliberative sessions in late 2005 and early 2006; it ultimately granted SBI's project site plan approval, with conditions, on April 26, 2006.

SBI again filed a timely appeal from the DRB determination; that appeal is the subject of this docket. Cumberland Farms also filed a timely cross-appeal from the DRB's 2006 site plan approval.

---

[2] See 2002 Regulations § 1803 and 2005 Regulations § 8.03.

The parties then filed pretrial motions, seeking this Court's determinations on four general topics. By its Interim Decision of February 21, 2007 in this docket, this Court determined: (1) the Supreme Court determination that SBI's proposed development is a permitted use under the applicable Zoning Regulations was a final use determination by which SBI has a vested right and upon which SBI could rely when it later sought site plan approval for that proposed development; (2) while the use determination for SBI's proposed development was governed by the Regulations in effect in 2002, its site plan application, submitted in 2005, would be governed by the Zoning Regulations in effect in 2005;[3] (3) the size limitation for convenience stores in 2005 Regulations § 12.02[4] did not limit the total size of SBI's convenience store to 2,000 square feet of gross floor area, but only that portion that was "designed and stocked primarily to sell food, beverages, and other groceries to customers[;]" and (4) the free-standing canopy SBI originally proposed to construct over the proposed gas pumps was an "accessory structure," the allowance of which would be determined at trial, pursuant to the provisions of 2005 Regulations § 2.09(A). In re: Sisters & Bros. Inv. Group, LLP Site Plan Application Appeal, Docket No. 106-5-06 Vtec, slip op. at 10-11 (Vt. Envtl. Ct. Feb. 21, 2007) ("2007 Interim Decision").

The Court also considered, but then rejected, Cumberland Farms' subsequent suggestion that because the Court had determined that SBI's site plan application must be reviewed for compliance with the 2005 Regulations, and the DRB had reviewed it for conformance under the 2002 Regulations, the Court should remand SBI's site plan application back to the DRB.[5] The Court also denied Cumberland Farms' later request to reconsider our 2007 Interim Decision under V.R.C.P. 59(e) and V.R.E.C.P. 5(a)(2). In re: Sisters and Bros. Inv. Group, LLP Site Plan Application Appeal, Docket No. 106-5-06 Vtec (Vt. Envtl. Ct. June 27, 2007).[6] Thus, SBI's site

---

[3] In support of this determination, we referenced the Supreme Court's determination announced just two months earlier in In re Appeal of Jolley Associates, 2006 VT 132, 181 Vt. 190. In Jolley, the Court noted that an applicant has a vested right in a prior use determination under the Town's prior bylaws even when a site plan application was later considered under the subsequently amended bylaws. 2006 VT 132, ¶ 17, 181 Vt. at 198.

[4] 2005 Regulations § 12.02 defines a "conveniences store" as a "retail store containing less than 2,000 square feet of gross floor area *designed and stocked primarily to sell food, beverages, and other groceries to customers*." (emphasis supplied).

[5] The Jolley Court provided reinforcement for this determination as well, particularly where it noted that the Court's jurisdiction is not tightly constrained by a statement of questions; rather this Court has the discretion to "constru[e] an appellant's] statement of questions liberally" so that it may address "matters intrinsic" to the issues raised on appeal. 2006 VT 132, ¶ 9, 181 Vt. at 194 (citing In re Hignite, 2003 VT 111, ¶ 9, 176 Vt. 562, 564-65).

[6] For clarity, we note that during the course of this appeal, we have modified the caption for this appeal to "In re Sisters and Brothers Investment Group, LLP (Colchester Site Plan Application).

plan application went to trial to address the specific issues of (1) whether the proposed canopy over the gas pumps conformed with 2005 Regulations § 2.09; and (2) whether the proposed project conformed with the specific site plan requirements contained in 2005 Regulations § 8.07. See 2007 Interim Decision at p. 11.[7] The following Findings and Conclusions are rendered with the intent of addressing those remaining questions.

## Findings of Fact

1.      SBI owns the property located at 883 and 865 College Parkway[8] in Colchester in an area identified as the General Development Two (GD-2) Zoning District.[9]

2.      SBI plans to develop two of its adjoining lots, known as Colchester tax map parcels 19-21 (containing 0.57± acres) and 19-22 (containing 0.30± acres). For the purposes of its development, SBI intends to merge these two lots.

3.      The surrounding area is best described as heavily developed, with mixed uses and frequented by heavy traffic. Being along Vermont Route 15, the proposed project abuts and will contribute traffic to one of the busiest thoroughfares in northern Vermont.

4.      The main entrance to Saint Michael's College is within a half mile west of SBI's properties; Fort Ethan Allen, home for the Vermont National Guard, is just east of SBI's property, also with a main entrance on Vermont Route 15. Fanny Allen Hospital is located directly across Route 15 from SBI's properties.

5.      Cumberland Farms' property, adjacent to other SBI properties to the west of the subject property, is developed with a convenience store with gasoline pumps, located under a canopy, adjacent to Vermont Route 15. While the canopy and gasoline pumps are best described as being on the westerly side of the Cumberland Farms' convenience store, when one approaches the property while driving on Vermont Route 15 from the west, the canopy and pumps first appear in front of the Cumberland Farms convenience store. There is a Dunkin Donuts facility to the east of the Cumberland Farms store, also bordering along Vt. Route 15.

---

[7]  SBI's Statement of Questions contains seven Questions; the two Statements of Questions Cumberland Farms filed contain a total of seven Questions. We understand that the two general questions presented above include all issues that remain for our determination in this appeal.

[8]  College Parkway abuts the campus of Saint Michael's College and is also identified as Vermont Route 15.

[9]  When the DRB, this Court and our Supreme Court reviewed SBI's prior application, it was noted that SBI's property was in the GD-1 District. Our reference here to the GD-2 District reflects the zoning district boundary line changes implemented with the 2005 revisions to the Regulations, also known as the "Colchester Zoning Regulations Supplement 18," or "Supplement 18."

6. The northerly boundary of the Cumberland Farms property is bordered by Johnson Avenue, which provides access to several single family homes, including those in an adjacent mobile home park. An easement that serves the SBI subject property currently provides access to Johnson Avenue.

7. Vermont Route 15 along these properties has restricted access. Drivers traveling west are able to access the Cumberland Farms, Dunkin Donuts and proposed SBI developments, as all these locations are on the northerly side of the highway. Drivers traveling east and wishing to visit these establishments need to travel past the locations, reverse direction at a designated U-turn, and enter while traveling west.

8. On November 9, 2005, SBI originally filed an application for site plan approval for its proposed 3,600 square foot convenience store with gas pumps, including a 22′ by 67′ canopy over the pumps.[10] While the proposed use and development components have remained unchanged since SBI first submitted its use application in 2002, SBI's detailed site plan has gone through as least four revisions since its first submission to the DRB. The 2006 DRB decision was based upon a review of the first and second drafts of SBI's site plans. Since then, and up until the time of trial, SBI has presented a third and fourth revision of its site plan.

9. SBI's site plan application, admitted at trial as SBI Exhibit 1, has remained materially unchanged in its narrative description of the proposed project since it was first submitted to the Colchester Planning Office on November 9, 2005. SBI Exhibit 1 is a photocopy of the completed site plan application form submitted to the Town in 2005.

10. The two versions of SBI's site plans reviewed by the DRB provided for a convenience store with gas pumps in front of the store, as it faced Vt. Route 15. A 22' by 67' canopy, detached from the store, provided some shelter from the elements for the gas pumps. The canopy was separated from and not attached directly to the store. See page 3 to SBI Exhibit 2.

11. In all versions of the SBI site plan, the bottom of the proposed canopy is 16 feet above the driveway surface, so that fuel delivery trucks may travel under the canopy when they deliver fuel to the site. The canopy itself is 2 ½ feet tall, thereby bringing the total height of the canopy to 18 ½ feet above the drive surface. See SBI Exhibit 20.

12. The undisputed testimony at trial from a town official provided reliable evidence that the Town has previously reviewed and approved three to four site plans in the last six years for

---

[10] In all versions of SBI's site plan, there are three pumps at which up to six vehicles can be fueled, all under a proposed canopy.

convenience stores with gasoline sales, all with detached canopies over the gasoline pumps. In all instances, the DRB review of these facilities did not include an interpretation of 2005 Regulations § 2.09 that considered the canopies as requiring accessory or other structure approval.

13. The third revision to SBI's site plan, titled "Site Plan - Option 1" and offered at trial as SBI Exhibit 30, also contained a proposed 3,600 square foot convenience store with gas pumps under a 22' by 67' canopy in front of the store. In this revised site plan, the canopy is attached to the convenience store, by what is referred to in SBI Exhibit 32 as "Possible Canopy Extension." There are other details in this version of the site plan that are discussed in more detail below.

14. Cumberland Farms expressed several concerns regarding the first three versions of the SBI site plan, including improper location for the gas pump canopy, insufficient parking, encroachment into the setback areas and a green-space area in the front yard that was undersized.

15. In response, SBI provided a fourth version of its site plan, titled "Site Plan – Option 2," that was introduced at trial as SBI Exhibit 31.[11] This revision to the SBI site plan provides for increased and slightly relocated parking, a larger front yard green space and removal of the gas pumps and detached canopy from the front yard and placement in the easterly side yard. The convenience store remains at 3,600 square feet of total gross floor area, although its orientation is turned to the east, so that store employees may monitor activity at the gas pumps. The canopy over the gasoline pumps has increased in size to 45' by 70', thereby totaling 3,150 square feet.[12]

16. Of the total 3,600 square feet in gross floor space in the convenience store, 1,600 sq. feet will be devoted to the display, storage and sale of retail items; 380 sq. feet will be devoted to a deli and related sales. There will not be any interior square footage devoted exclusively to the sale of gasoline; gasoline customers will either pay for their purchases at the pumps or pay at the register located within the retail section of the store.

---

[11] At trial, the Court reserved judgment on the admissibility of SBI Exhibits 30, 31, & 32, all of which were offered in rebuttal to concerns expressed by Cumberland Farms. Cumberland Farms asserted that the exhibits referenced a site plan materially different from the plans reviewed by the DRB and should not be allowed as evidence in this appeal. Because all these exhibits reference revisions to a site plan for the same proposed use of the property, which revisions were made in response to Cumberland Farms' prior site plan objections, we decline Cumberland Farms' request that they be deemed inappropriate for this proceeding and do hereby admit Exhibits 30, 31 & 32 as both relevant and not prohibited by other rule or statute. See V.R.E 401, 402.

[12] SBI Exhibit 31 contains a note regarding the gasoline pumps and proposed dimensions of the canopy, which explains that there shall be six proposed pumps with 12 spaces and a 45' by 70' canopy. This note conflicts with the number of pumps actually depicted on the site plan and the apparent relative size of the canopy to the 45' by 80' convenience store. We will disregard the note's apparent typographical errors and rely on Exhibit 31's depiction of three pumps with six spaces. In addition, because we attach limitations on the canopy's size, infra, in accord with the Zoning Regulations, we disregard the apparent canopy size discrepancy.

17. Each of SBI's site plans provides for vehicle access on all four sides of the convenience store, in response to a request or directive made by the Colchester Fire Department Chief, so that fire and other emergency response vehicles will have access to all areas around the proposed convenience store.

18. Each draft of the proposed site plan calls for two curb cuts onto Vt. Route 15, the easterly cut serving as an entrance to and the westerly cut serving as an exit from the site, the size and location of which have not materially changed.

19. Details concerning the site, its development, and operation were provided in SBI admitted Exhibits 3 (construction details); 4 (pump station design); 5 (site lighting analysis and specifications); 6 (stormwater narrative); 8 (landscape planting schedule); 9 (connections to municipal water lines and hydrant installation); 10–11 (water and sewer allocation); 14 (state highway curb cut application); 20 (architectural building floor plan and elevation renderings); 23 (project review determination by Colchester Police Chief); 24 (Feb. 8, 2006 site plan application revisions, submitted to DRB); and 27 (highway traffic impact report).

20. Estimates of the traffic generated from the proposed project are reliably represented in the report from SBI's traffic expert, SBI Exhibit 27, which were not credibly contested at trial and are not materially impacted by the site plan revisions.

21. These site plan details, referenced in Exhibits 3–6, 8–11, 14, 20, 23–24 and 27, provide site specifications and conditions that neither SBI nor Cumberland Farms specifically challenged in this appeal; they have not been materially impacted by the proposed site plan revisions evidenced by SBI Exhibit 31.

22. The 2006 DRB site plan approval contained a number of conditions that neither SBI nor Cumberland Farms challenged in this appeal. Further, the 2005 revisions to the Zoning Regulations do not appear to impact upon the relevancy, applicability or need for these approval conditions. With reference to pages 16 to 22 of the April 26, 2006 DRB Findings of Fact, Discussion and Order on SBI's site plan application, these conditions are numbered 1, 2, 3 (subsections (b)–(qq), inclusive), 4 (subsection (a)–(h), inclusive), 5–24, and 25 (subject to a revision, replacing the reference to the DRB Findings of Fact and Order with a reference to this Merits Decision and accompanying Judgment Order).

### Discussion

As a general premise, we note than an applicant must fulfill an initial burden of production: to show both that they have the authority to conduct the development activities

contemplated in their application and that the development conforms to the applicable zoning regulations. See In re Wright Quarry Site Plan and Conditional Use Applications, Docket Nos. 156-7-06 Vtec and 190-8-06 Vtec, slip op. at 16 (Vt. Envtl. Ct. Dec. 13, 2007) (citing In re Appeal of van Nostrand, Docket Nos. 209-11-04 Vtec and 101-5-05 Vtec, slip op. at 9 (Vt. Envtl. Ct. Jan. 13, 2006), reversed on other grounds, 2008 VT 77). Thus, for the issues that remain for us to adjudicate in this de novo appeal, we turn first to the Colchester Zoning Regulations, as amended in 2005, to determine whether SBI has provided sufficient evidence to show that its proposed development conforms to those Regulations. We also took note of the evidence offered by Cumberland Farms. However, because Cumberland Farms did not produce evidence of sufficient magnitude or credibility, we are convinced that SBI fulfilled its burden of persuasion on the questions of conformity with the applicable zoning regulations

As this site plan application proceeded through the stages of initial hearing and appeal, SBI attempted to address concerns brought forth by the Town and its commercial neighbor, Cumberland Farms. SBI's efforts appeared to respond to the expressed concerns, and yet its efforts brought new concerns, particularly that its site plan revisions have been so material as to (1) erase its vested right to the final use determination it obtained though its successful appeal to the Vermont Supreme Court and (2) require this Court to remand its application to the DRB. This Court rejected both suggestions in its June 27, 2007 Decision on Cumberland Farms' Motion to Reconsider.

It is important to again note that this Court is vested in de novo appeals with all the power and authority of the municipal panel that first heard the application. 10 V.S.A. § 8504(h); V.R.E.C.P. 5(g); In re Torres, 154 Vt. 233, 235 (1990). Further, we are not limited by the specific findings or legal conclusions chosen by the municipal panel, only by what that panel "might have done with an application properly before it," subject of course to the requirement that "an appeal is duly perfected" so as to vest this Court with jurisdiction. In re John A. Russell Corp., 2003 VT 93, ¶ 29 176 Vt. 520, 526-27 (citing Torres, 154 Vt. at 236). We therefore again reject the notion that we should decline to rule on the merits of SBI's pending application.

## A.    Canopy Conformance to the Applicable Regulations

We therefore turn to the first issue for our consideration remaining in this appeal: does the proposed canopy over the three gasoline pumps comply with Regulations § 2.09. But we must first determine which, if not all, of the proposed canopies we should asses. In making this determination, we note that SBI last revised its site plan to include a detached canopy, located to

the east of the proposed convenience store, with the store aligned to face the easterly canopy. See SBI Exhibit 31. This proposal also incorporates site revisions that bring the proposed development more into compliance with the site plan requirements of 2005 Regulations § 8.07, which are discussed in more detail below. But we also note that this site plan revision, "Site Plan – Option 2" on SBI Exhibit 31, represents the plan last presented for approval to this Court.

It is an applicant's responsibility to specify the details of its development plan; a court that offers judgment upon a variety of development plans, including those that may have been superseded by revised plans, runs the risk of offering an improper advisory opinion. See In re Appeal of 232511 Investments, Ltd., 2006 VT 27, ¶ 19, 179 Vt. 409, 417. Our obligation is to review the application presented to us, which may be revised within the confines of the original application. We conclude that we have the authority to consider the revised site plan, evidenced in SBI Exhibit 31, within the scope of SBI's original site plan application, much as the DRB had authority to review a revised site plan (and did so) when it considered SBI's original application in 2005 and 2006. Torres, 154 Vt. at 235. We are also authorized when considering a site plan application to impose needed reasonable conditions so as to render the proposed plan in compliance with purposes of the applicable regulations. 24 V.S.A. § 4464(b)(2).

In considering the requirements for an accessory structure such as the proposed canopy shown in SBI Exhibit 31, we note that the canopy has previously been sized so as to encompass less than 50% of the total square footage of the principal building. A condition[13] limiting its size to no more than 1,800 square feet will render it in compliance with 2005 Regulations § 2.09(A)(2); it is more than ten feet away from the principal structure, and thus in compliance with § 2.09(A)(4); does not exceed the height of thirty-five feet and is therefore in conformance with § 2.09(A)(5) and Table A-2; is located in the side yard[14] and therefore conforms with § 2.09(A)(7). All other provisions of Regulations §2.09 either do not apply to SBI's proposed side yard gasoline pump canopy or do not provide a foundation for concluding that the canopy is not in compliance with this Regulation. We therefore conclude that SBI's proposed canopy complies with the applicable Regulations.

---

[13] Such a condition is specifically noted in the Judgment Order that accompanies this Decision.

[14] While located in the easterly side yard, SBI's proposed canopy will appear to be in front of the principal structure (the convenience store) to those traveling from the east, much as the side yard gasoline pump canopy at Cumberland Farms appears to those traveling from the west.

**B.      Site Plan Conformance**

We again must note that, in response to SBI's revisions to its site plan, Cumberland Farms focused its remaining objections, including those presented at trial, upon the propriety of this Court reviewing and remanding the revised plan to the DRB. For example, when SBI revised its plans so as to locate the gasoline pump canopy to the easterly side yard, so as to conform with Regulations § 2.09(A)(7), and remove the offending encroachments into the front and side yards, Cumberland Farms provided no credible evidence of new non-conformities that arose. Thus, we were left with SBI's revised plans as evidence, not specifically contradicted by credible evidence, that their revisions accomplished the goal of eliminating the previously identified non-conformities that could have provided a foundation for a denial of their application.

Site plan applications submitted after the 2005 revisions to the Colchester Zoning Regulations (also known as "Supplement 18") must satisfy the general and specific review standards of 2005 Regulations §§ 8.06 and 8.07. The questions of which Supplement to the Colchester Zoning Regulations applies to SBI's site plan application (decided to be Supplement 18 in our February 21, 2007 Interim Decision) and whether SBI's site plan satisfies the applicable review standards were preserved for our review in this appeal by Cross-Appellant's Statements of Questions (filed on May 30, 2006 and supplemented on June 9, 2006).

Cumberland Farms' specific concerns, articulated as the Court was receiving testimony and other evidence concerning the prior drafts of SBI's site plan, included improper encroachment into the front and side yard setbacks, insufficient green space in the front yard, and insufficient parking. We will address these issues in turn, specifically in relation to the site plan SBI last presented to the Court: SBI Exhibit 31.

Site Plan – Option 2, Exhibit 31, with the gasoline pump canopy relocated to the easterly side yard, eliminated the encroachment into the front and side yard setbacks, and is therefore in conformance with the dimensional standards established for the GD–2 Zoning District. See 2005 Regulations Table A-2; and see 2005 Regulations § 8.07(A)(5) (requiring consideration of setbacks). This revised plan also reduced the front yard development to no more than 30% and eliminated the encroachments into the front and side yard setbacks, as credibly explained by SBI's site expert, Mr. Matosky. Lastly, the revised site plan includes 17 parking spaces, not including the six spaces at the gasoline pumps that could be used by those customers purchasing

gasoline. Regulations Table 10-2; and see 2005 Regulations § 8.07(A)(13) (requiring evaluation of parking requirements).

The minimum number of parking spaces required for SBI's development was the topic of extensive testimony at trial, although there was no dispute as to the actual number of spaces provided on SBI's final revised plan. See SBI Exhibit 31 (depicting the 17 plus 6 spaces noted above). Regulations Table 10–2 makes a distinction between the number of parking spaces required for a convenience store (4 per 1,000 square feet of gross floor area) and for a gas station (5 per 1,000 square feet of gross floor area). Further, it was disputed at trial whether the spaces available at the gasoline pumps, totaling six in number, may be counted as spaces to satisfy the requirements from Regulations Table 10–2.[15] We conclude that we need not determine whether the actual spaces at the gasoline pumps (versus spaces in which other cars may wait to receive fuel) are "queuing spaces" and therefore not available to satisfy SBI's parking requirements, because we conclude that the 17 parking spaces otherwise available on the revised plan are sufficient to satisfy the parking space requirements for this facility. Because no measurable area within the convenience store is devoted to gasoline sales, we specifically conclude that the SBI facility must include parking at the rate of four spaces per 1,000 square feet of gross floor area, or no less than 15 parking spaces. In reaching this conclusion, we note that the interpretation of Table 10–2 espoused by Cumberland Farms not only would have us ignore the spaces at the gasoline pumps that would be available for parking vehicles, but would also have us treat the entire convenience store as devoted to gasoline sales. We interpret Table 10–2 by an understanding of its plain language. In re Casella Waste Mgmt., Inc., 2003 VT 49, ¶ 6, 175 Vt. 335, 337 (quoting Lubinsky v. Fair Haven Zoning Bd., 148 Vt. 47, 49 (1986)). Because Table 10–2 includes a specific reference to convenience stores and because the square footage of the SBI store will be devoted to such uses, we conclude that Table 10–2 imposes a parking space requirement of four spaces per 1,000 square feet of gross floor area for the SBI facility.

While Cumberland Farms provided submissions to support its claims that the prior site plan submissions did not conform to the Regulations,[16] we viewed the above as the only compliance claims upon which Cumberland Farms offered credible evidence. SBI responded to these claims in the manner that is perhaps repeated in most zoning proceedings where an

---

[15] See Note 1, preceding Regulations Table 10–2: "Any spaces required as part of the operational function, such as display, storage or queuing spaces at the transfer station or service station, are in addition."

[16] See Cumberland Farms Exhibit 3.

objection is raised: the applicant revised its plans to address the expressed complaints. Revisions to a site plan that do not materially change the pending application or the permit requested are lawfully allowed in an on-going municipal proceeding and do not require the commencement of new proceedings. See Torres, 154 Vt. at 235-37 (explaining that a reviewing court's authority is no broader than the municipal tribunal's, limiting the court to review of the application that was before the tribunal). We therefore conclude that on the specific issues preserved for our review in this appeal, SBI's Site Plan – Option 2 conforms to the applicable provisions of 2005 Regulations §§ 8.06 and 8.07.

The details of SBI's proposed site development and operation are itemized in the exhibits listed in our Finding 19, above. SBI presented these exhibits as evidence that their proposed development conformed to all of the other site review standards enumerated in 2005 Regulations §§ 8.06 and 8.07; Cumberland Farms offered no discernable, credible evidence at trial to contradict these additional site review compliance presentations. Some of these exhibits need some minor revisions, to accommodate the reorientation of the canopy and convenience store to the easterly side of the lot. We were convinced by the SBI expert's testimony that these minor revisions, where needed, so as to accommodate the canopy and store reorientation, will not change the development's conformance with Regulations §§ 8.06 and 8.07.

### Conclusion

For all the reasons more specifically stated above, we conclude that the revised site plan submitted on behalf of Sisters & Brothers Investment Group, LLP, known as "Site Plan – Option 2", SBI Exhibit 31, conforms with the applicable provisions of the 2005 revised Town of Colchester Zoning Regulations ("Supplement 18") that were presented for our review in this appeal, subject to the following conditions:

a. The gasoline pump canopy shall be adjusted in size so as not to exceed 1,800 square feet; and

b. The following plans and reports, admitted into evidence at trial, shall be modified, if and where necessary, so as to accommodate the canopy and convenience store reorientation to the easterly side yard, but shall not in any way be revised in a manner that impacts upon the conformance of the revised site plan, as shown in "Site Plan – Option 2", SBI Exhibit 31, to the site plan review standards contained in 2005 Regulations §§ 8.06 and 8.07:

- SBI Exhibit 3 (construction details);
- SBI Exhibit 4 (pump station design);
- SBI Exhibit 5 (site lighting analysis and specifications);

- SBI Exhibit 6 (stormwater narrative);

- SBI Exhibit 8 (landscape planting schedule);

- SBI Exhibit 9 (connections to municipal water lines and hydrant installation);

- SBI Exhibit 10–11 (water and sewer allocation);

- SBI Exhibit 14 (state highway curb cut application);

- SBI Exhibit 20 (architectural building floor plan and elevation renderings);

- SBI Exhibit 23 (project review determination by Colchester Police Chief);

- SBI Exhibit 24 (Feb. 8, 2006 site plan application revisions, submitted to DRB); and

- SBI Exhibit 27 (highway traffic impact report).

The current proceedings before this Court on the pending application have now been completed. The Town of Colchester Zoning and Planning officials are hereby directed to incorporate all conditions announced above into any future permit that may issue in connection with the SBI site plan last submitted to this Court, including the conditions not contested in this appeal, which this Court has determined (1) remain necessary under the 2005 Regulations and (2) have not been impacted by SBI's revised plans. See Finding 22, above.

Dated at Berlin, Vermont as of the 16th day of June, 2008.

_____
Thomas S. Durkin, Environmental Judge