2006 VT 27

# In re Appeal of 232511 Investments, Ltd. d/b/a Stowe Highlands

[898 A.2d 109]

No. 05-183

Present: Reiber, C.J., Johnson, Skoglund and Burgess, JJ., and Allen, C.J. (Ret.), Specially Assigned

Opinion Filed April 7, 2006

*Harold B. Stevens* of *Stevens Law Office*, Stowe, for Appellant/Cross-Appellee.

*Leighton C. Detora*, Pro Se, Barre, Appellant.

*Amanda S. E. Lafferty* of *Stitzel, Page & Fletcher, P.C.*, Burlington, for Appellee.

¶ 1. **Johnson, J.** Appellant 232511 Investments, Ltd., doing business as Stowe Highlands (Stowe Highlands), appeals the Environmental Court's grant of summary judgment, which upheld a decision of the Town of Stowe's Development Review Board[1] denying Stowe Highlands' application to amend its permit for a Resort Planned Unit Development (Resort PUD). Stowe Highlands argues that both the Board and the Environmental Court erred in refusing to allow construction of fourteen clustered houses in place of a hotel. Cross-appellant Leighton Detora appeals from the Environmental Court's reversal of a decision of the Board that required all owners of property within the Stowe Club to be included as co-applicants for a permit to convert the Resort PUD to a Planned Residential Development (PRD). We affirm in part.

¶ 2. Stowe Highlands owns a portion of a 236-acre planned development in the Town of Stowe, known as the Stowe Club. The Stowe Club is located in an area zoned Agricultural and Rural Residential 3 (RR3), which allows for Resort PUDs as conditional uses. In 1985, the Town granted then-owner Nolex Corporation a Resort PUD permit for the Stowe Club, allowing it to construct a planned development consisting of seventy-eight residential units and a 100-unit hotel. Since 1985, ownership of the Stowe Club has changed hands many times, and plans for development have undergone numerous revisions. Stowe Highlands and its predecessors have received permits for and built a number of residential housing units, many of which were sold to individual homeowners. Although Parcel 1 of the Stowe Club has been specifically permitted and reserved for a hotel and other associated commercial uses, it remains undeveloped.

¶ 3. In 2003, Stowe Highlands applied for an amendment to its Resort PUD permit to allow it to abandon plans to build a hotel and, instead, to construct eighteen clustered houses on the 24.3-acre parcel of land comprised of Parcel 1 and Lots 21-23 (hereinafter Parcel 1). After a public hearing, Stowe Highlands amended its proposal to include only fourteen clustered houses. Public hearings were held on the new proposal, and in May 2004, the Board issued a decision denying Stowe Highlands' application to amend its Resort PUD permit. The Board emphasized that the permit for the Resort

---

[1] Over the course of the Stowe Club project, the development review functions of the Planning Commission and the Zoning Board of Adjustment have been consolidated in the Development Review Board. Throughout this decision, "Board" refers collectively to the Zoning Board of Adjustment and the Development Review Board.

PUD was issued, amended, and developed with the understanding that the Stowe Club would include some kind of resort. It concluded that if Stowe Highlands wished to abandon the resort, it would need to either change the entire 236-acre property from a Resort PUD to a PRD, or, in the alternative, develop the property as a residential development subject to RR3 district requirements. The Board then stated that if Stowe Highlands were to pursue a PRD designation, it would need to include all other property owners within the Stowe Club as co-applicants for the permit.

¶ 4. Stowe Highlands appealed the Board's decision to the Environmental Court and moved for summary judgment. The Town opposed the motion and filed its own cross-motion for summary judgment. On April 26, 2005, the Environmental Court granted summary judgment in favor of the Town. It held that the regulatory scheme for a Resort PUD required some kind of inn or hotel as a "necessary component" of the development. The court further held that recorded plans showing a hotel on Parcel 1 made the hotel a condition of the Resort PUD permit. It also held that if Stowe Highlands wanted to build clustered residential units in place of the hotel, it would need to apply for a conditional use permit to develop the entire 236-acre property as a PRD. Finally, the court held that other property owners within the Resort PUD need not be co-applicants in the event that Stowe Highlands applies to amend its permit from a Resort PUD to a PRD.

¶ 5. As a preliminary matter, Stowe Highlands contends that the Town does not have standing in this appeal. This argument is without merit. Vermont's municipal planning statute allows an "interested person" to appeal the Board's decision to the Environmental Court. 24 V.S.A. § 4471. The definition of an "interested person" includes "[t]he municipality in which the plan or a bylaw of which is at issue in an appeal brought under this chapter." 24 V.S.A. § 4464(b)(2).[2] We have previously held that "[m]unicipalities in Vermont have a limited right to appeal the decisions of their zoning boards; the town plan or a municipal bylaw must be at issue in the case." *Sabourin v. Town of Essex*, 146 Vt. 419, 420, 505 A.2d 669, 670 (1985). Although a town is not allowed to challenge the wisdom of a

---

[2] Effective July 1, 2004, 24 V.S.A. § 4464(b)(2) was amended so that the relevant language of § 4464(b)(2) now falls under § 4465(b)(2), in nearly identical form. 2003, No. 115 (Adj. Sess.), § 106. We will refer to the statute in effect at the time of the Board's decision.

zoning decision, it may challenge a board decision that interprets one of the town's bylaws. *Rossetti v. Chittenden County Transp. Auth.*, 165 Vt. 61, 66, 674 A.2d 1284, 1287 (1996) (citing *Sabourin*, 146 Vt. at 420-21, 505 A.2d at 670). The Board based its denial of Stowe Highlands' application on an interpretation of the Town's zoning regulations relating to Resort PUDs. Stowe Highlands challenged that interpretation, thereby placing the meaning of the regulation at issue. The Town has not addressed the wisdom of the Board's decision, only its interpretation of the regulations. Therefore, if the Town were appealing the Board's decision, it would have standing, and it certainly has standing to defend the decision on appeal.

¶ 6. Stowe Highlands raises three issues on the merits. First, it argues that the Environmental Court erred in holding that the Town's zoning regulations require a Resort PUD to include a lodging facility. Second, it argues that the court erred in concluding that a permit condition or approved site plan required the Resort PUD to include a hotel. Finally, Stowe Highlands argues that the court erred in concluding that it had to amend the Resort PUD to a PRD to replace the hotel with clustered housing. Cross-appellant Detora argues that for Stowe Highlands to convert the Resort PUD to a PRD, all other landowners within the Stowe Club must be included as co-applicants. Because this latter issue was not properly before the Board or the Environmental Court, we do not reach it on appeal.

¶ 7. Stowe Highlands first argues that the Town's zoning regulations do not require a Resort PUD to include a lodging facility. It argues that the regulations are merely permissive, and as such, allow Stowe Highlands to build a hotel in the Resort PUD, but do not require it to do so. We review zoning ordinances according to the general rules of statutory construction. *In re Casella Waste Mgmt., Inc.*, 2003 VT 49, ¶ 6, 175 Vt. 335, 830 A.2d 60. "We first construe words according to their plain and ordinary meaning, giving effect to the whole and every part of the ordinance." *In re Stowe Club Highlands*, 164 Vt. 272, 279, 668 A.2d 1271, 1276 (1995). We will affirm the Environmental Court's interpretation of a zoning ordinance unless it is clearly erroneous, arbitrary or capricious. *In re Weeks*, 167 Vt. 551, 554, 712 A.2d 907, 909 (1998). "[T]he paramount function of the court is to give effect to the legislative intent." *Lubinsky v. Fair Haven Zoning Bd.*, 148 Vt. 47, 49, 527 A.2d 227, 228 (1986).

¶ 8. The Town's zoning regulations describe the purpose of a Resort PUD as follows: "To allow a large resort, being a self-contained complex insulated from and not intruding on surrounding areas, to

be developed for the purpose of providing housing, recreation and services for its transient guests and other allowed uses." Town of Stowe, Zoning Regulations § 18.3 (2002) [hereinafter Stowe Zoning Regulations]. If read in isolation, § 18.3 could support the position advanced by Stowe Highlands, in which the use of the word "allow" at the beginning of the sentence could be understood as permissive. This line of reasoning fails, however, when the regulation is examined in context. Stowe Highlands places undue emphasis on the first part of § 18.3 while ignoring the last. It would have us stop reading at the word "resort," ignoring the fact that a Resort PUD is intended to provide "housing, recreation and services for its transient guests and other allowed uses." *Id.* Without a resort, the Stowe Club could not provide recreation opportunities or services, nor could it accommodate transient guests. Thus, § 18.3, on its own, is ambiguous as to whether a resort is a necessary component of a Resort PUD.

¶ 9. That ambiguity is alleviated, however, when § 18.3 is read together with the rest of the Town's zoning regulations. Section 18 deals generally with Planned Unit Development (PUD), and sets forth the purposes, requirements, and types of PUDs authorized in Stowe. Among other things, PUDs are intended "[t]o integrate productive uses related to tourism and recreation," and "[t]o add to business and employment opportunities and the economic base of the community." Stowe Zoning Regulations § 18(3)-(4). This language demonstrates the intent of the drafters that PUDs include a mix of uses. Residential development plays an integral role as part of a PUD. Permitting residential development to the exclusion of other uses, however, defeats the combined purposes of providing business opportunities and integrating them with other uses within the PUD.

¶ 10. The Town's zoning regulations expressly contemplate the type of residential development proposed by Stowe Highlands. Section 17 provides for clustered housing in PRDs to "integrate housing of various types into a harmonious grouping and to facilitate adequate and economical provision for streets and utilities." Stowe Zoning Regulations § 17. Stowe Highlands argues that PRDs are simply a subset of uses allowed within the more stringent requirements of a Resort PUD. This argument, however, focuses exclusively on the quantitative differences between the two types of development without taking into consideration the qualitative differences. Although clustered houses may have a lesser overall impact on the area than a hotel, restricting the inquiry to the issue of impact oversimplifies the nature of the Board's planning and review functions.

¶ 11. Planned unit development is intended, in part, "to merge zoning and subdivision requirements." *In re Stowe Club Highlands*, 164 Vt. at 276, 668 A.2d at 1275. When reviewing an application for a conditional use permit, the Board must consider not only the capacity of the existing infrastructure, but also the "character of the area affected." Stowe Zoning Regulations § 4.7(2)(A). When reviewing an application for a subdivision permit, the Planning Commission must be satisfied that the character of the land is suitable for its intended purposes. Town of Stowe, Subdivision Regulations § 5.1(1) (2002). "In addition, subdivision plats should be in general accordance with Stowe's Municipal Plan." *Id.* When viewed as a whole, the Town's zoning and subdivision regulations require the Board to look beyond the level of impact a project will have on the land and infrastructure. The regulations require the Board to examine the proposed development in terms of its compatibility with the character of the land and its consistency with the municipal plan. Thus, the Board must look at the qualitative aspects of the proposal.

¶ 12. When reviewing the merits of a proposal, the Board may decide that a certain area is suited to mixed-use development and another is not. Considering the project in light of the municipal plan and the character of the area, the Board may have legitimate reasons to approve a mixed-use Resort PUD in an area of Stowe where it would deny a single-use PRD. With respect to their eventual uses, the two forms of development are fundamentally different, carrying with them different implications for the specific area and for the town as a whole. Failing to require a resort as part of a Resort PUD would strip the Resort PUD designation of its value as a tool for land-use planning. Accordingly, we affirm the Environmental Court's ruling upholding the Board's decision.

¶ 13. This conclusion disposes of Stowe Highlands' next argument, which is that the Environmental Court erred in concluding that a hotel was required by a permit condition or approved site plan. We have recognized the distinction between discretionary permit conditions, which must be expressly stated, and minimum legal requirements of a specific land use designation, which need not be expressly stated. See *In re Stowe Club Highlands*, 164 Vt. at 276, 668 A.2d at 1274 ("[T]here is no requirement that the zoning board explicitly state that the landowner must comply with the law or detail all the applicable legal requirements."). Because a resort is a mini-

mum legal requirement of a Resort PUD, the Board did not need to identify the resort as a condition of the initial permit.

¶ 14. Stowe Highlands' third argument is that even if its original permit required a resort, it should be allowed to construct fourteen clustered houses instead of a hotel without seeking a new permit. It argues that because clustered residential development is a conditional use allowed in a PUD, its current plans are permissible under a Resort PUD permit. In deciding this issue, we consider not just the 24.3-acre Parcel 1, but the entire 236-acre parcel.[3] Stowe Highlands' most recent proposal forecloses the possibility that the development will include a resort. We have held above that without the resort, the development would no longer meet the requirements of a Resort PUD. We thus conclude that Stowe Highlands may not proceed with its proposed development under its current permit.

¶ 15. Inevitably, conditions will change over the course of a long-term development project like the Stowe Club. This does not mean, however, that the developer may respond by unilaterally changing the nature of the project. Towns could not achieve any of the goals of planned development if not for continued oversight of long-term projects. See *Frankland v. City of Lake Oswego*, 517 P.2d 1042, 1047 (Or. 1973) ("[W]hile the primary benefits of a PUD ordinance are flexibility in design and improved development and use of land areas, these objectives can be secured only if the planning authority retains its control by, at a minimum, overseeing and approving general development plans of a developer."). A Resort PUD permit does not carry with it implied authorization for a developer to alter its plans to construct what amounts to a single-use PRD where its permit contemplates a mixed-use Resort PUD. Such a broad and indefinite conception of the land-use permitting process places too much discretion in the hands of developers and could undercut the Board's ability to perform its planning functions.

---

[3] The Resort PUD regulations require residential dwelling units to meet the minimum lot size requirements of the zone in which it is located. Stowe Zoning Regulations § 18.3(1)(E). In the RR3 zone, that minimum lot requirement is three acres per unit. *Id.* § 6.5(2). Thus, taking into account only the 24.3-acre Parcel 1, Stowe Highlands would be allowed to build only eight residential units. In its plan to build fourteen residential units, Stowe Highlands relies on available density units from the rest of the Resort PUD. Thus, the density of proposed clustered housing on Parcel 1 is inextricably linked to that of the entire 236-acre Stowe Club.

¶ 16. A Minnesota court came to a similar conclusion in *Yeh v. County of Cass*, 696 N.W.2d 115 (Minn. Ct. App. 2005). In *Yeh*, a developer sought to expand a "commercial PUD" by constructing numerous residences, while retaining the minimum number of rental units to qualify as a "resort," and therefore commercial, under the relevant ordinance. *Id.* at 127. The court held that "[b]ecause [the development] was previously a commercial resort, and appellant's PUD is residential, appellant is not entitled to proceed over-the-counter and without public oversight." *Id.* at 129. Much like the developer in *Yeh*, Stowe Highlands seeks to avoid public oversight and proceed "over-the-counter" with its new and fundamentally different proposal. We agree with the Environmental Court's decision not to allow Stowe Highlands to proceed without first receiving the Board's approval.

¶ 17. Finally, both the Board and the Environmental Court noted that one means by which Stowe Highlands could proceed with its proposed development would be to amend the entire Resort PUD to a PRD. Cross-appellant Detora argues that for Stowe Highlands to change its permit from Resort PUD to PRD, it needs all other landowners within the Stowe Club to appear as co-applicants. We decline to address this issue because it is not properly before us.

¶ 18. The Board concluded that for Stowe Highlands to abandon development of the Stowe Club as a Resort PUD it would have to remove the property from the classification of planned development or, in the alternative, seek approval from the Board to convert it to a PRD. The Board then stated that if Stowe Highlands were to abandon the Resort PUD designation, it would need all property owners within the Stowe Club to be co-applicants to the change. While this statement may have been helpful in alerting Stowe Highlands and Detora to issues likely to arise if Stowe Highlands applied to amend the designation of the Stowe Club from a Resort PUD to a PRD, Stowe Highlands did not actually file such an application. As a result, the Board's statement with respect to co-applicants lacked the support of a properly developed factual record and had no effect on the application before it.[4] The Environmental

---

[4] Stowe Highlands rests its challenge to the Board's requirement of co-applicants on the effect of documents not presented to the Board, not considered by the Environmental Court, and not available to us now. These documents appear to be the subject of separate litigation. *Stowe Highlands v. Stowe Club Owners Ass'n*, 248-11-03 Lecv. We decline to speculate as to how these documents might affect a hypothetical permit application.

Court's ruling disagreeing with the Board's statement was thus premature, and the issue presented on appeal is not ripe for review.

¶ 19. We must have an actual case or controversy before us to render a decision. *Parker v. Town of Milton*, 169 Vt. 74, 77, 726 A.2d 477, 480 (1998). Until Stowe Highlands seeks to amend its permit from a Resort PUD to a PRD, the question of whether it must include co-applicants is hypothetical, and any conclusion we might reach would be advisory. See *In re Bennington Sch., Inc.*, 2004 VT 6, ¶¶ 18-19, 176 Vt. 584, 845 A.2d 332 (mem.) (refusing to render an opinion as to whether a hypothetical student housing proposal, which had not actually been presented to the zoning board, would require a conditional use permit). "Such purely advisory opinions are outside our jurisdictional power." *Id.* ¶ 19.

*Affirmed in part. The Environmental Court's ruling that Stowe Highlands need not include co-applicants in an application to amend its permit is vacated.*