STATE OF VERMONT
ENVIRONMENTAL COURT

|  | } |  |
| --- | --- | --- |
| In re SP Land Co., et. al. Act 250 Permit | } | Docket No. 257-11-08 Vtec |
| Amendment (LUP #1R0835-3) | } | (Appeal from Dist. #1 Env. Commission) |
|  | } |  |

## Decision on Cross-Motions for Summary Judgment and Dismissal

This appeal relates to the continued efforts to develop what has been commonly referred to as the Killington Resort Village ("Village"), a multi-dimensional development at the base of the Killington Ski Resort. The specific issue preserved for review in this appeal is the propriety of an administrative amendment to the Killington Resort Village Master Plan, originally reviewed in 1998. The administrative amendment currently under review authorized a realignment of boundary lines within the proposed Village area, resulting in the subdivision of the area to be developed into 15 separate lots.

MTB Killington, LLC, AMSC Killington, LLC and SPII Resort, LLC are the current owners of the Killington Ski Resort, located in the Town of Killington. These Owners propose to subdivide the 368± acre portion of the Killington Resort property that encompasses the proposed Village development into fifteen lots and to thereafter transfer those lots to a fourth entity: SP Land Company, LLC ("SP Land"). The Owners and SP Land joined as Co-Applicants in requesting the administrative amendment that is the subject of this appeal. They are assisted in these proceedings by Timothy M. Eustace, Esq.

Mountainside Properties, Inc. ("Mountainside"), owner of developed lands that adjoin the area proposed for the Village development, first requested that the District #1 Environmental Commission ("District Commission") alter the administrative amendment issued on May 9, 2008, by the District #1 Environmental Commission Coordinator ("District Coordinator"). On October 3, 2008, the District Commission issued its Memorandum of Decision on Mountainside's Motion to Alter. Feeling aggrieved by that Decision, Mountainside filed an appeal with this Court. Mountainside is assisted in this appeal by C. Daniel Hershenson, Esq.

Now pending before the Court are the parties' cross-motions for summary judgment. Co-Applicants suggest that summary judgment is appropriate for various reasons on all fifteen of the questions posed in Mountainside's Statement of Questions. Mountainside seeks summary judgment on its Questions 14 and 15, suggests that the District Commission's October 3, 2008

1

Decision on its Motion to Alter ("Commission Decision") should be vacated, and contends that the Co-Applicants' application for administrative amendment should be subject to a more thorough review by the District Commission.

## Background

The parties have submitted thorough Statements of Undisputed Material Facts, with supporting documentation, and have responded to the other party's Statement of Undisputed Facts where disagreement has occurred as to whether a fact is material or disputed. For the purpose of determining whether to grant or deny the pending motions, we have listed below the material facts understood to be undisputed.

We recite these facts with two cautions in mind: first, these facts are recited for background purposes only, since it would be improper to render factual finding before trial and while merely determining the outcome of pre-trial motions. Fritzeen v. Trudell Consulting Eng'rs, Inc., 170 Vt. 632, 633 (2000) (mem.) (citing Booska v. Hubbard Ins. Agency, Inc., 160 Vt. 305, 309 (1993)). Second, we review all material facts in a light most favorable to the nonmoving party and enter summary judgment for the moving party only when that perspective on the material facts requires entry of judgment as a matter of law. City of Burlington v. Fairpoint Communications, 2009 VT 59, ¶5.

The following material facts are undisputed, unless otherwise noted.

1. For more than ten years, the current and prior owners of the Killington and Pico Ski Resorts have presented proposals to construct a significant Village development within the confines of their resorts. On September 14, 1998, the then owners of the Killington and Pico Ski Resorts submitted a master plan application under the then-existing Environmental Board Rules 10(C) and 21, as well as the former Environmental Board Master Plan Permit Policy and Procedure for Partial Findings of Fact (collectively "Env. Bd. Master Plan Rules and Policies").

2. On April 21, 1999, the District Commission issued its Findings of Fact and Conclusions of Law on the Killington Master Plan ("Master Plan Findings and Conclusions #1R0835"; copy provided as Appellant's Exhibit B). Pursuant to the Env. Bd. Master Plan Rules and Policies, this District Commission determination did not include an actual Act 250 Land Use Permit, but rather served as a vehicle for the then Killington owners to provide an overview of their plans for future development. In making this disclosure of their master plan, the then owners could also receive positive factual determinations under some of the ten criteria of Act 250, and their subcriteria. 10 V.S.A § 6086(a). The District Commission rendered positive findings on some, but not all, of the Act 250 criteria relevant to the Killington Master Plan.

3. The Master Plan Findings and Conclusions #1R0835 was appealed to the former Vermont Environmental Board. On July 20, 2000, the Board rendered its Findings of Fact, Conclusions of Law and Order ("Board Findings, Conclusions and Order"), which concluded that the Killington Master Plan was entitled to partial positive findings under some, but not all, of the relevant Act 250 criteria and subcriteria. While the record includes a copy of the July 20, 2000 Board Findings, Conclusions and Order, which Appellant provided as Exhibit C, we have not been made aware of a master plan permit having been issued in those proceedings.

4. The Board Findings, Conclusions and Order was the subject of two administrative amendments prior to the administrative amendment challenged by Mountainside in these proceedings. First, on March 29, 2004, the District Coordinator issued Administrative Amendment #1R0835-1, authorizing the permittees "to subdivide approximately 470 acres into nine lots with no construction of improvements proposed." Land Use Permit Administrative Amendment #1R0835-1, at 1 (Mar. 29, 2004), a copy of which was provided as Co-Applicants' Exhibit 14. This Administrative Amendment also provides that "[a]ll terms and conditions of [the Master Plan Findings and Conclusions #1R0835] are in full force and effect except as amended herein." Id.

5. On August 19, 2004, the District Commission issued Administrative Amendment #1R0835-2; a copy was provided as Mountainside's Exhibit D. This administrative amendment "specifically renews the findings in Master Plan [Findings and Conclusions #1R0835] for a period of five years from the date of this decision."[1] Administrative Amendment #1R0835-2, at 1 (Aug. 19, 2004).

6. On April 8, 2008, the Co-Applicants submitted the third request for an administrative amendment, seeking the authority to subdivide and transfer from the Owners to SP Land the 368± acre portion of the Killington Ski Resort property that encompasses the proposed Village development. The proposed subdivision would realign the interior lot lines within the 368± acre portion encompassing the proposed Village development so as to subdivide the Village development area into fifteen lots, all of which would at least initially be transferred to SP Land.

---

[1] The District Commission's original Master Plan Findings and Conclusions #1R0835 contained the following condition:

> Pursuant to Rule 21 and the Master Plan Policy, the affirmative findings contained herein under criteria 1D (Floodways), 9B (Prime Agricultural Soils), 9D&E (Earth Extraction), and 9L (Rural Growth Areas), are binding on the parties and final for a period of five years from the date of this decision. Pursuant to the policy, the applicant may seek to renew the findings prior to expiration.

Id. at 82.

3

7.     On May 9, 2008, the District Coordinator issued Administrative Amendment #1R0835-3, which stated:

> This permit specifically authorizes the permittees to subdivide portions of the resort property to be sold to SP Land Company, LLC for future development purposes. (See Attachment "A" (Exhibit #20)[).[2]] No development of these parcels is proposed or approved in this administrative amendment. The project is located off Killington Road at the Killington Ski Resort.

Administrative Amendment #1R0835-3, at 1 (May 9, 2008), a copy of which was provided as Co-Applicants' Exhibit 2.

8.     Administrative Amendment #1R0835-3 authorizes the reconfiguration into fifteen lots of the land remaining in the Village development that had previously been divided into nine lots (pursuant to Administrative Amendment #1R0835-1). The -3 Administrative Amendment also provided that "[a]ll conditions of Land Use Permit #1R0835 [sic[3]] (and amendments) are in full force and effect except as amended herein." Id.

9.     Mountainside received notice of the 2008 administrative amendment proceedings. After the District Coordinator's decision was issued, Mountainside filed a motion to alter with the District Commission; a copy of Mountainside's motion was provided as Exhibit 12.

10.     In its motion, Mountainside noted that it was filed "pursuant to [Act 250] Rule 31(A)" and made several statements of facts and concerns. Mountainside Motion to Alter, at 1–2 (May 23, 2008). It concluded its motion with the specific request "that the administrative amendment be altered so as to remove the 64.42 acre East Mountain parcel[4] from the list of properties approved for subdivision and that said permit be further conditioned on applicants' demonstrating that the 39.8 acre parcel described in paragraph 6 above[5] is not in whole or in part owned by Mountainside Properties, Inc." Id. at 2–3.

---

[2]  Exhibit 20 provided a list specifying the fifteen lots on which the Village development would now occur. This list also identifies the specific acreage for each lot and makes reference to a meets and bounds survey for each new lot.

[3]  As noted above in Background paragraph 2, we have not been made aware of an actual Act 250 permit being issued in the #1R0835 proceedings. Rather, we understand this reference in Administrative Amendment #1R0835-3 to be to the Master Plan Findings and Conclusions #1R0835 first issued by the District Commission on April 21, 1999, and thereafter addressed by the former Environmental Board in its Findings, Conclusions and Order of July 20, 2000, both referenced above.

[4]  Co-Applicants refer to this parcel of 64.42± acres as the "Right of First Refusal Parcel," also identified as Killington Tax Map Parcel #36-11.

[5]  Paragraph 6 of Mountainside's motion to alter describes this 39.8± acre parcel as owned by Mountainside and expresses a concern that it cannot determine from the Co-Applicants' description of the fifteen lots to be created whether Mountainside's property has mistakenly been included in Co-Applicants' lot description.

11.    In response to Mountainside's motion, the District Commission convened a hearing on September 22, 2008, and issued its Memorandum of Decision on Mountainside's motion to alter on October 3, 2008. A copy of this Decision was provided as Co-Applicants' Exhibit 13. The Commission's Decision contains three specific determinations:

a.    First, the Commission concluded that Mountainside was entitled to party status in these administrative amendment proceedings, but only for the limited questions "of whether or not co-applicancy was required and . . . whether or not Mountainside had a particularized interest in the application." Re: SP Land, No. 1R0835-3, Memorandum of Decision on Motion to Alter, at 1 (Dist. #1 Comm'n Oct. 3, 2008).

b.    Second, the Commission concluded that the "only interest which Mountainside may have in land [proposed for subdivision and transfer to] SP Land appears to be limited to the right in some circumstances to establish easements for access to water supplies and to participate in the use of sanitary waste disposal systems which may be developed." Id.

c.    Third, the Commission concluded that "[r]equiring SP Land to name Mountainside as co-applicant is inappropriate. The naming of a party [as a co-applicant] to an Act 250 proceeding is called for when necessary to assure enforceability of the provisions of a permit or a Commission decision. Those considerations are not present in this proceeding." Id. at 2.

12.    The Commission concluded its Decision with determinations that Mountainside's motion to alter should be denied and that Co-Applicants' administrative amendment application should be granted. Mountainside thereafter filed a timely appeal from the District Commission Decision.

13.    Although not specifically referenced in the Commission's October 3, 2008 Decision, the parties' filings with this Court appear to confirm that neither Mountainside's own 39.8± acre parcel, nor the 64.42± acre parcel upon which Mountainside holds a right of first refusal are included in the property proposed to be subdivided. Mountainside does not appear to contest these conclusions in this appeal. It appears that the only real property interests Mountainside may hold on property to be subdivided are easement interests for access to future water source and waste disposal systems.

## Discussion

### Statement of Questions 1 and 2

We turn first to Co-Applicants' assertion that by its Questions 1 and 2, Mountainside requests that this Court determine the parties' respective property rights. Co-Applicants assert that such questions are improper for this Court to consider, given the limited subject matter

5

jurisdiction of this Court. We have repeatedly noted that land use appeals present this Court with limited subject matter jurisdiction, and that its jurisdiction does not include the adjudication of private property rights. See, e.g., In re Leiter Subdivision Permit, No. 85-4-07 Vtec, slip op. at 4 (Vt. Envtl. Ct. Jan. 2, 2008) (Durkin, J.). We would therefore summarily dispense with questions that concern property ownership disputes. However, the various supplemental filings, particularly on behalf of Mountainside, confirm that Mountainside is not asking the Court to make a property rights determination. Whatever confusion may have once existed over whether the pending application improperly attempted to subdivide property to which Mountainside held fee simple title or a right of first refusal, that confusion has been erased. The parties appear in agreement that no property Co-Applicants propose for subdivision is owned by Mountainside; the only interests Mountainside holds in the subject property are in the nature of easements.

Mountainside does continue to suggest that its easement interests are so substantial as to require that Mountainside join as a co-applicant in these proceedings.[6] We reject this argument, as it has no foundation in the applicable statutory provisions, Act 250 Rules, or case law precedent.

We begin our analysis with Act 250 Rule 10,[7] which provides that the "record owners" of the land involved in a project shall be the applicants. This Rule provides an additional requirement that the applicants also "list" all parties "who have a substantial property interest, such as through title, lease, purchase or lease option, right-of-way or easement" in the property which is the subject of the application. Act 250 Rule 10(A). The duty to list these property-interest holders goes no further, unless it is shown "that the property interest of any such person is of such significance, therefore demonstrating a lack of effective control by the applicant, that the applicant cannot be accepted or the review cannot be completed without their participation as co-applicants." Id.

Mountainside's easements interests are arguably substantial to its own operations, as the easements may provide the necessary water supply and wastewater disposal systems access that are essential to any future development that Mountainside wishes to pursue. But we know of no showing by Mountainside that their easement interests are so substantial as to bar review of this application to administratively amend the previous Findings, Conclusions and Order concerning

---

[6] See Mountainside's Statement of Question 2, which specifically poses this legal issue, and Question 1, which poses the more general question of whether the pending application is "complete."

[7] Our reference here is to the Act 250 Rules promulgated by the Vermont Natural Resources Board and made effective as of October 3, 2007, since these were the Rules in effect at the time Co-Applicants submitted their administrative amendment application.

6

the Killington Village Master Plan. Co-Applicants have readily acknowledged that whatever easement interests Mountainside enjoys must be respected by the owners of the property encumbered by Mountainside's easements. In rendering this determination, we are mindful that the pending administrative amendment application suggests no new development on the subject property; any development proposed on the resulting fifteen lots must be preceded by a further Act 250 amendment application to authorize the individual development projects. Only when those future applications are filed can a determination be made as to what impact, if any, the proposed future development may have on Mountainside's easement interests. Considering that impact now would be mere speculation and advisory in nature. Such an advisory consideration would be improper. In re 232511 Investments, Ltd., 2006 VT 27, ¶19, 179 Vt. 409.

Mountainside suggests that additional interests it enjoys could also be impacted by development on the subdivided lots, including the right to construct ski lifts on its adjoining property and the possible encroachment onto the parties' respective properties of water protection zones for existing and future water supply wells. These allegations of impacts of possible future developments on Mountainside's interests may be addressed in future permit proceedings; it would be mere speculation to determine now what impacts upon Mountainside's interests, if any, may occur, when the future development has not yet been presented at a District Commission hearing.

To the extent that Mountainside's Questions 1 and 2 are premised upon an assertion that Act 250 Rule 10(A) requires Mountainside to be named as a co-applicant, we find no factual or legal support for that argument and therefore **GRANT** Co-Applicants' request for summary judgment on those two Questions.

**Statement of Questions 3 through 15**

We next turn to Co-Applicants' remaining legal theories, the first of which suggests that the remainder of Mountainside's Questions should either be dismissed or subject to summary judgment. First, Co-Applicants ask that the Court focus on the decision from which Mountainside has appealed, which is the District Commission's October 3, 2008 Memorandum of Decision on Mountainside's motion to alter. That motion was made pursuant to Act 250 Rule 31, which provides the scope of alteration requests and the requirements a requesting party must fulfill. In particular, the moving party should "number each requested alteration separately" and that a supporting legal memorandum "should state why each requested alteration is appropriate and the location in the existing record of the support[]." Act 250 Rule 31(A)(2). With these

limitations in mind, we are left to wonder why Mountainside did not choose to file a general appeal in accordance with 10 V.S.A. Chapter 220. The answer may be found at the end of Administrative Amendment #1R0835-3, which directs that "[p]rior to any appeal of this Administrative Amendment to the Environmental Court, the applicant or a party must file a Motion to Alter with the District Commission within 15 days from the date of this Administrative Amendment, pursuant to Act 250 Rule 34." Administrative Amendment #1R0835-3, at 2 (May 9, 2008).

Thus, we decline to adopt Co-Applicants' argument that Mountainside limited the scope of its appeal by filing a motion to alter, and thereafter appealing the District Commission Decision on its motion. That procedure was directed by Administrative Amendment #1R0835-3 and by Act 250 Rule 34(D)(2). Further, when the District Commission issued its Decision on Mountainside's motion to alter, it adopted and affirmed the administrative amendment issued by the District Coordinator. The procedure Mountainside followed was directed by the applicable Rule and did not constrict the issues Mountainside could properly raise in this appeal.

But it appears that Mountainside ignores the limited nature of the proceedings from which it has appealed. These amendment proceedings do not authorize any development. In fact, the original Master Plan Findings and Conclusions #1R0835, issued on April 21, 1999, provides no authority for development. Mountainside would have this Court consider the various impacts the proposed Village development would have upon Mountainside's interests, when the specific aspects of those developments have not been first presented to or considered by the District Commission. Conducting such a review in the first instance in this appellate proceeding would go beyond the jurisdictional constraints of this Court. In re Torres, 154 Vt. 233, 236 (1990).

To demand, as Mountainside does here, that the Court should embark on a detailed analysis of the proposed development that is to occur within the subdivided properties ignores the authorization of and rationale for Act 250 master plan review proceedings. See generally Envtl. Bd. & Dist. Envtl. Comm'ns, Act 250 Jurisdictional-Procedural Action Record: Master Permit Policy and Procedures for Partial Findings of Fact (Mar. 29, 2000), available at http://www.nrb.state.vt.us/lup/publications/masterpol.PDF. Master plan review causes developers of significant projects to disclose to the community what short- and long-range plans they envision for a multi-phased project. In consideration of this disclosure, an "applicant may seek permission from the district environmental commission . . . to proceed with review under specific criteria of the Act in order to gain a greater degree of assurance that future development

8

projects may be approved on a proposed development tract." Id. at 1. The master plan procedure does not assure approval for the individual development components of a project; those individual development projects are subject to review in future individual permit application proceedings. However, master plan procedures allows "for greater efficiency in the environmental review process and therefore avoid[s] unnecessary and unreasonable costs to the applicant and parties." Id.

Administrative Amendment #1R0835-3 does not provide authority for any construction or improvements; it provides that the entire tract of 368± acres remains subject to the original Master Plan Findings and Conclusions #1R0835, as amended by the -1 and -2 Administrative Amendments. The proposed subdivision of the 368± acres also remains encumbered by the Master Plan Findings, Conclusions and Order of the former Environmental Board, which contains no authority to develop any portion of the 368± acre parcel.

On the record before us, we can only reach one conclusion: that there will be no impact upon the Mountainside property, or any Act 250 criteria, by the subdivision and sale of the 368± acre area encompassed by the proposed Killington Village development. Any development or improvements to any portion of this subdivided 368± acre tract must first be authorized by an Act 250 permit issued in connection with future proceedings before the District Commission.

### Conclusion

For all the reasons stated herein, the motion for summary judgment filed on behalf of Co-Applicants SP Land Company, LLC, MTB Killington, LLC, AMSC Killington, LLC and SPII Resort, LLC is hereby **GRANTED** and the summary judgment motion filed on behalf of Mountainside Properties, Inc. is **DENIED**. The consequence of this Decision is that Administrative Amendment #1R0835-3 to the Killington Master Plan Findings of Fact, Conclusions of Law and Order is hereby **AFFIRMED**.

A Judgment Order accompanies this Decision. This completes the current proceedings in this Court concerning this appeal.

Done at Berlin, Vermont this 1st day of December, 2009.

_____
Thomas S. Durkin, Environmental Judge