STATE OF VERMONT
ENVIRONMENTAL COURT

|  |  |
|---|---|
| } | |
| In re Hale Mountain Fish & Game Club } | Docket Nos. 149-8-04 Vtec |
| (Appeal of Beauchesne) } | & 259-12-05 Vtec |
| } | |

### Third Interim Decision on Cross-Motions for Summary Judgment

These consolidated appeals arise out of two decisions by the Zoning Board of Adjustment ("ZBA") of the Town of Shaftsbury ("Town"), declining to direct that zoning enforcement actions be initiated against Hale Mountain Fish & Game Club, Inc. ("Hale Mountain" or "the Club"). Neighbors Owen and Kathy Beauchesne ("Neighbors") are the principal parties encouraging the Town to pursue enforcement against the Club. Neighbors are represented by Paul S. Gillies, Esq. Hale Mountain is represented by Rodney E. McPhee, Esq.

This appeal, which generally involves determining whether Hale Mountain has violated the Town of Shaftsbury Zoning Bylaws ("Bylaws") by failing to obtain appropriate zoning permits before making certain improvements to the Club, has previously been the subject of two pre-trial decisions of this Court. An Interim Decision was issued on March 25, 2008, and a Supplemental Interim Decision was issued on November 21, 2008, both of which identified disputed material facts that precluded the Court from determining whether Hale Mountain's actions were in violation of the Bylaws.

The Court made two legal rulings, however, in the Supplemental Decision that narrowed the issues in this appeal. First, it noted that the fifteen-year statute of limitations on municipal enforcement actions limited Neighbors' claims against Hale Mountain to alleged zoning violations that occurred on or after May 24, 1989. Second, the Court held that the parties are collaterally estopped from litigating the same factual issues decided by the former Environmental Board in a related action Neighbors previously brought against Hale Mountain, alleging that the Club must obtain an Act 250 state land use permit for the same improvements.

In an exercise of discretion, this Court postponed the merits hearing on the disputed factual issues until the Act 250 litigation was finally resolved by the Supreme Court. After the Supreme Court issued its decision on February 2, 2009, both Neighbors and Hale Mountain renewed their cross-motions for summary judgment. It is those motions that we seek to address in this Third Interim Decision.

Hale Mountain has moved for summary judgment on all issues raised by Neighbors, contending that any of the Club's actions not barred by the statute of limitations were conducted in accordance with the Bylaws. Neighbors, on the other hand, seek partial summary judgment, alleging that approximately nineteen improvements undertaken by the Club violate the Bylaws as a matter of law, but also requesting a hearing to prove violations resulting in health hazards.

**Factual & Procedural Background**

The Supreme Court's February 2, 2009 ruling, which affirmed the factual findings and legal conclusions of the Environmental Board in the related Act 250 proceeding, has resolved a number of the material factual disputes surrounding the ultimate issue of what improvements or use increases Hale Mountain has conducted. We hereby adopt the Board's factual findings, to the extent relevant to the legal issues that arise under the applicable municipal zoning regulations; those findings can be found in In re Hale Mountain Fish & Game Club, Inc., Decl. Ruling # 435, Findings of Fact, Conclusions of Law, & Order (Vt. Envtl. Bd. Aug. 4, 2005) and In re Hale Mountain Fish & Game Club, Inc., Decl. Ruling # 435, Supplemental Findings of Fact & Conclusions of Law (Vt. Envtl. Bd. Feb. 26, 2008).

To place the pending cross-motions into context, we repeat certain facts already described in this Court's prior decisions and add the following material facts from the Environmental Board's decision and the record now before us, all of which we understand to no longer be disputed unless otherwise noted:

**I.    Factual History**

1.    Hale Mountain, a non-profit Vermont corporation, is a general membership hunting and fishing sports club located on approximately 215 acres that it owns on Rod and Gun Club Road in the Town of Shaftsbury. The Club is located in two zoning districts: the Rural Residential District ("RR District") and the Forest and Recreational District ("F&R District").

2.    The Club was formed in 1969 with the merger of two preexisting gun clubs. Although membership has fluctuated, the Club has consistently averaged around 300 members. The levels of activity and noise have not increased in intensity since its inception and through the date of the Environmental Board's final factual determinations (Feb. 26, 2008).

3.    The property contains a clubhouse for public use and assembly as well as a trailer for the resident caretaker, first installed in the early 1950s. The caretaker's trailer has been replaced

several times; the current caretaker trailer was installed in 1994. It is used as a residence and located on the same lot as the clubhouse.

4. The Club has made periodic improvements to the original well and septic system serving the clubhouse and caretaker's trailer, the latest of which occurred in 2002 when it removed tile, installed a galvanized steel cover, and installed a culvert.

5. Over the years, Hale Mountain has maintained the Club's two shooting ranges (one for pistols, the other for rifles) by performing periodic earthwork. During the 1960s, the Club established two berms in the ranges at distances of 100 yards and 200 yards. In 1973, the Club also created a berm to separate the two ranges, which eroded by 1980. The Club finally erected a berm on three sides of the pistol range during the mid-1990s.

6. The Club has also performed periodic landscaping on the rifle range. It cleared the rifle range in 1986 and graded it in 1987. Then in 1991, the Club removed trees and vegetation within the rifle range to approximately 437 yards from the shooting station.

7. The Club has also incorporated a number of structures into the shooting stations for the two ranges. The Club installed a freestanding cover over the rifle-range shooting station between 1989 and 1991 and a cover over the pistol-range shooting station in 1995. Then in 1992, the Club built a twelve-foot by fourteen-foot storage unit into the rifle-range shooting station, and in 1999, the Club installed wooden walls around part of the rifle-range shooting station.

8. In 1991, the Club replaced the asphalt trap-house pads with a poured concrete pad and replaced the pole-supported, plywood-roofed, trap-field pavilion with a new pole-supported structure eight feet high.

9. The Club replaced a clay-target storage trailer in 1997, placing the new trailer in substantially the same location, but clearing trees and performing earthwork in the process.

10. Then in 1998, the Club obtained a permit to replace a wooden garage sitting on concrete blocks. The twenty-four-foot square replacement garage sat on a slab in a slightly different location and required the Club to perform earthwork and install crushed stone.

11. The Club began to use portable trap machines in 1991, and then in 2002 or 2003, the Club purchased and installed new five-stand trap machines. In 2004 the Club began advertising that trap shooting was available on Sundays.

3

12.     Despite the improvements over the years, neither the shooting activity nor the shooting capacity of the ranges has increased. Deposition rates and accumulation rates of spent ammunition near streams and wet areas has not increased.

13.     During 1979, the Pittstown Beagle Club ("Beagles") began using Club property for beagle running. Since then, the Beagles have made periodic improvements with the Club's permission. For example, in 1992, the Club allowed the Beagles to install a 150-square-foot rabbit pen behind the Club's garage. During the same year, the Club extended a culvert to accommodate road improvements made for the Beagles. The Beagles also removed some red pines in 1992 under the authorization of the Club. Finally, the Beagles situated a portable toilet on the Club's property sometime before they stopped holding events at the site. The Beagles no longer use the Club property; the record before us does not reveal that the Club currently uses the rabbit pen that the Beagles constructed, or that the portable toilet remains on the property.

14.     Appellants first acquired and began occupying their nearby residential property in 1988.

## II.     Procedural History

15.     In January of 2004, Neighbors first requested that the Town Zoning Administrator initiate an enforcement action against Hale Mountain for violating the Bylaws. The Administrator denied this request, and Neighbors appealed that decision to the ZBA on May 24, 2004.[1] After conducting a hearing at which it took testimony from both Appellants and Club representatives, the ZBA upheld the Zoning Administrator's rulings, thereby denying Neighbors' appeal on all but one issue: that necessary permits were not obtained for improvements to one of the shooters' shelters and to the rifle shooting area. Neighbors thereafter filed a Notice of Appeal with this Court, contesting the ZBA's decision insofar as it upheld the Zoning Administrator's rulings. Neighbors' appeal of this decision is the basis of Docket Number 149-8-04 Vtec.

16.     In May of 2005, Neighbors again contacted the Zoning Administrator and again requested enforcement action against Hale Mountain for its alleged violations of the Bylaws. After the Zoning Administrator took no action, Neighbors appealed to the ZBA. The ZBA subsequently denied Neighbors' request for additional enforcement, reasoning that all relevant issues regarding the controversy between Hale Mountain and Neighbors were already before this

---

[1] As this Court previously ruled, this date marks the date on which Neighbors tolled the statute of limitations. In re Hale Mountain Fish & Game Club, Nos. 149-8-04 Vtec & 259-12-05 Vtec, slip op. at 7 (Vt. Envtl. Ct. Nov. 21, 2008) (Durkin, J.).

4

Court in Docket Number 149-8-04 Vtec. Neighbors thereafter appealed that decision to this Court, which forms the basis of the controversy in Docket Number 259-12-05 Vtec.

17. In addition to the two appeals currently pending before this Court, Neighbors sought a jurisdictional opinion from the District 8 Environmental Commission Coordinator ("District Coordinator") that Hale Mountain should be required to obtain an Act 250 state land use permit for the alleged improvements and expansions performed at the Club. In June 2004, the District Coordinator concluded that the entire Club needed an Act 250 permit. Hale Mountain appealed the decision to the former Vermont Environmental Board.[2]

18. The Environmental Board reversed the District Coordinator's decision that the entire Hale Mountain facility needed an Act 250 permit. Rather, it concluded that only certain improvements required Act 250 review: installation of a new well and wastewater disposal system in 1983; installation of a replacement garage in 1998 and new clay-target storage trailer in 1997; and improvements in connection with the commencement of the Beagles in 1979. According to the Board, these improvements were "substantial changes" to the Club's preexisting development because they were "cognizable physical changes" that had the "potential for significant impact" on one or more of the Act 250 criteria. In re Hale Mountain Fish & Game Club, Inc., Decl. Ruling # 435, Findings of Fact, Conclusions of Law, & Order, at 15–22 (Vt. Envtl. Bd. Aug. 4, 2005). Despite these substantial changes, the Board concluded that the entire facility could escape Act 250 review because the changes did not permeate the entire project and the Club pre-dated the original enactment of Act 250 (i.e., September 1, 1970). Id. at 23.

19. Neighbors appealed this determination to the Vermont Supreme Court, which reversed the Board's decision and remanded the matter for further fact-finding. In re Hale Mountain Fish & Game Club, Inc., 2007 VT 102, ¶ 1, 182 Vt. 606 (mem.). The Court specifically concluded that it could not determine from the record of the Environmental Board proceedings whether the cognizable changes and improvements at the Club had the potential to increase shooting activity (and thus, significantly impact the Act 250 noise criterion) because the Environmental Board had not addressed the critical issue: whether the intensity of use and noise levels had increased since 1970. Id. at ¶ 7–8. The Supreme Court remanded the proceedings for specific determinations on

---

[2] Before the Permit Reform Act of 2004 (specifically 10 V.S.A. § 8504(a)) granted this Court jurisdiction over all appeals from determinations made by Act 250 district commissions and their coordinators, such appeals were heard by the former Environmental Board.

the impact of improvements on noise and use, as well as the impact on streams and wetlands. Id. at ¶ 11.[3]

20. The Environmental Board made additional findings on the remanded issues, but its conclusion remained the same. In re Hale Mountain Fish & Game Club, Inc., Decl. Ruling # 435, Supplemental Findings of Fact & Conclusions of Law (Vt. Envtl. Bd. Feb. 26, 2008). The Board determined that the shooting ranges and trap area accommodated the same amount of users as before 1970, and that the improvements had not affected the levels of participation or shooting activity. Id. at 4. It concluded that the entire Hale Mountain operation was not subject to Act 250 review, and that the only substantial changes since 1970 requiring Act 250 review involved the discrete improvements previously identified. Id. Neighbors again appealed this ruling to the Supreme Court.

21. On February 2, 2009, the Supreme Court affirmed the Environmental Board's conclusion that the Club had not made sufficient changes to warrant Act 250 review of the entire operation. See In re Hale Mountain Fish & Game Club, Inc., 2009 VT 10 ¶ 8 (mem.). The Court affirmed all of the Environmental Board's factual determinations, explicitly noting that the fact-finders were entitled to deference. Id. It did not disturb the Board's legal conclusions that Act 250 review was necessary for the three previously identified improvements, but that the Club need not apply for an overall Act 250 permit for its facilities and their use. Id. at ¶ 7.

22. With the Act 250 proceedings concluded, these municipal appeals were reactivated. After these proceedings were rescheduled for trial, Appellants suggested that all remaining legal issues might be able to be resolved with another round of summary judgment motions, which the Court now addresses in this Decision.

### Standard of Review

Summary judgment is appropriate only where the moving party establishes there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Chapman v. Sparta, 167 Vt. 157, 159 (1997). The Court "place[s] the burden of proof on the moving party, and give[s] the opposing party the benefit of all reasonable doubts and inferences." Id. "When

---

[3] The Court also instructed the Board to apply a specific standard in determining whether the entire facility required Act 250 review. According to the Court, an entire facility must be reviewed under Act 250 if substantial changes could not be distinguished from the preexisting development and its impacts. In re Hale Mountain Fish & Game Club, Inc., 2007 VT 102, ¶¶ 5, 8 (relying on In re Black River Valley Rod & Gun Club, Inc., Application #2S1019-EB, Findings of Fact, Conclusions of Law, and Order, at 14 (Vt. Envtl. Bd. Mar. 27, 1997)).

both parties move for summary judgment, each is entitled to the benefit of all reasonable doubts and inferences when the opposing party's motion is being judged." City of Burlington v. Fairpoint Communications, 2009 VT 59, ¶5. We address the newest summary judgment motions in this light.

## Discussion

The issues material to the pending cross-motions for summary judgment have been significantly narrowed by prior events. The Court previously held that Neighbors had tolled the statute of limitations on May, 24, 2004, when Hale Mountain received official notice of the enforcement actions instituted against them. In re Hale Mountain Fish & Game Club, Nos. 149-8-04 Vtec & 259-12-05 Vtec, slip op. at 7 (Vt. Envtl. Ct. Nov. 21, 2008) (Durkin, J.). Therefore, the Court determined that any violations occurring before May 24, 1989, were barred by the fifteen-year statute of limitations established in 24 V.S.A. § 4454. Id. at 9.[4]

This Court also previously held that the factual determinations of the former Environmental Board made in the Act 250 proceeding not vacated by the Supreme Court have a preclusive effect on identical factual issues that are material to the current municipal appeals. Id. at 13. The doctrine of issue preclusion bars parties from re-litigating factual disputes previously resolved by the Board. Id. at 15. Despite the different legal standards applied in the two related proceedings, the parties are precluded from disputing the underlying facts to which those differing standards may be applied in each proceeding. Id. at 13.

With these prior rulings in mind, Hale Mountain has suggested that summary judgment is appropriate for all alleged violations occurring before May 24, 1989, since even if activities prior to that date constituted a zoning violation, an enforcement action based upon them is barred by the statute of limitations. Hale Mountain also seeks summary judgment on all use violations alleged by Neighbors, since the Environmental Board conclusively determined that the levels of use and activity at the Club have not increased or changed since 1970. For reasons fully discussed in the November 2008 Supplemental Interim Decision, we **GRANT** Hale Mountain summary judgment on these two issues.

Despite the Board's determination that use at the Club has not changed in nearly forty years, Neighbors maintain that the Environmental Board's binding factual determinations

---

[4] The Court did note, however, that this statute of limitations did not apply to zoning violations that either involve public health risks or hazards—which could be enforced at any time, regardless of when they commenced—or use violations, which are seen as continuous violations. Id. at 6 (citations omitted).

demonstrate as a matter of law that the Club must obtain more than a dozen permits to comply with the Shaftsbury Bylaws. In their pending motion for summary judgment, Neighbors list approximately nineteen actions taken in the Rural Residential District[5] since May 24, 1989, for which Hale Mountain must secure a zoning permit.[6] These improvements include:

(1) installing a cover over the rifle-range shooting station between 1989 and 1991;
(2) installing a cover over the pistol-range shooting station in 1995;
(3) erecting a storage unit into the rifle-range shooting station in 1992;
(4) installing wooden walls around the rifle-range shooting station in 1999;
(5) improving the well serving the clubhouse and caretaker's trailer by removing tile and installing a steel cover and culvert in 2002;
(6) installing a caretaker's trailer in 1994;
(7) installing a clay-target storage trailer in 1997;
(8) replacing the trap-house pad in 1991;
(9) replacing the trap-field pavilion in 1991;
(10) Beagles' removing of red pines on the property in 1992;
(11) constructing rabbit pens in 1992;
(12) extending a culvert for the Beagles in 1992;
(13) installing a portable toilet on the Beagles' property;
(14) erecting a replacement garage in 1998;
(15) beginning to use portable trap machines in 1991;
(16) purchasing new five-stand trap machines again in 2002;
(17) conducting trap shooting on Sundays beginning in 2004;
(18) clearing vegetation on the rifle range to approximately 437 feet in 1991; and
(19) erecting a berm around three sides of the pistol range in the mid-1990s.

In opposition, Hale Mountain argues that summary judgment is warranted in the Club's favor on all issues raised by Neighbors because the improvements were conducted in accordance with the Bylaws. In support, Hale Mountain argues that Club activities are permitted uses in the Rural Residential District ("RR District") and no change-in-use permits are required according to the former Environmental Board's conclusive factual determination. For the reasons more fully developed below, we conclude that Hale Mountain must obtain a zoning permit for any improvements since May 24, 1989, that constitute "land development" under the Bylaws.

Hale Mountain incorrectly believes that the Club can escape all permitting obligations by maintaining a use specifically permitted in the RR District, apparently assuming that zoning

---

[5] Even though the Club is located in two districts, Neighbors are only interested in enforcing the Town Bylaws applicable to activities in the RR District.

[6] Our narrative here is not intended to suggest that the various items for which we conclude that Hale Mountain must obtain a zoning permit cannot be applied for in a "global" application. We leave that determination to Hale Mountain, in the first instance, and the appropriate municipal panel charged with reviewing that application(s).

permits are only required when a landowner changes the use of its lot. In fact, quite the opposite is true, at least as to structures and site improvements. Under the Bylaws, landowners must secure a zoning permit prior to any development on their property. In this regard, the legal standard established under the zoning Bylaws is quite different than the "substantial change" standard of Act 250 that the former Environmental Board was asked to apply. The Shaftsbury Bylaws state that "[b]efore any land development . . . is performed, a permit shall be obtained . . . by the landowner." Bylaws § 8.1.1. Land development includes the "construction, reconstruction, conversion, structural alteration, relocation, or enlargement of any building or other structure, the construction of roads, utilities, and any site improvements; or any mining, excavating or land fill, . . . or extension of use of land." Bylaws app. A (defining land development).

This express permitting requirement also applies to all land development, whether or not the project is specifically listed as a permitted use in the RR District, and whether or not the project is a change in use.

With this understanding of the Bylaws in mind, we now turn to each of the nineteen improvements listed in Neighbors' pending motion for summary judgment to determine whether they involve land development requiring a permit under Bylaws § 8.1.1.

The periodic improvements made to the shooting stations (listed above as improvements 1–4) each require a zoning permit under § 8.1.1. All of these improvements constitute construction, including the covers installed over the shooting stations at the pistol-range and rifle-range, the wooden walls placed around the rifle-range shooting stations, and the storage unit incorporated into the rifle-range shooting stations. Each involves the construction of a structure, which qualifies as land development requiring a permit.

The 2002 improvements to the well and septic system serving the caretaker's trailer (listed above as improvement 5) also requires a permit pursuant to § 8.1.1. This is a site improvement involving excavation and land fill, which constitutes land development.[7]

The caretaker's trailer installed in 1994 and the clay-target storage trailer installed in 1997 (listed above as improvements 6 and 7) also require a permit under § 8.1.1. A permit is

---

[7] We are aware that state or municipal water supply and waste system permits may authorize both the design and construction of such systems. Since we have not been made aware that Hale Mountain secured such a permit, we conclude that the well and septic system excavation and other construction constitutes land development under Bylaws § 8.1.1.

9

necessary for the relocation or construction of all structures, including trailers, since the Bylaws define "structures" as including "manufactured home[s] or trailer[s]." See Bylaws app. A (defining structures). It does not matter that these trailers may have been fabricated off-site and are or once were mobile, since we understand a trailer to be "[a] large transport vehicle designed to be hauled by a truck." The American Heritage Dictionary of the English Language at 1361 (1st ed. 1979). Although the record reveals that Hale Mountain obtained a 1973 permit for the original caretaker's trailer and a 1988 permit for the original clay-target storage trailer, no permits have been provided for the current replacements. Hale Mountain must therefore obtain a permit for each of these replacement structures.

Replacing the trap-house pad and trap-field pavilion in 1991 (listed above as improvements 8 and 9) are also land developments requiring a permit under § 8.1.1. Hale Mountain is correct that structures lawfully existing prior to November, 1980, may be replaced or repaired. However, these structures cannot be wholly replaced without a zoning permit, since such replacement constitutes land development.

Zoning regulations often provide for the substantial repair or replacement of preexisting, nonconforming structures; Shaftsbury has so provided in Bylaws § 7.1.1.5. But while such repair or replacement may be allowed, a zoning permit is required. We know of no provision that would allow for the substantial replacement of a structure in Shaftsbury without first obtaining a zoning permit. Bylaws § 7.1.1.5 provides no such exception, and Hale Mountain has not made the Court aware of such an exception. In the absence of an exception, we must conclude that the mandate of Bylaws § 8.1.1, requiring that all "land development" be authorized by a zoning permit, governs the replacement structures at issue here.

Our reference to Bylaws 7.1.1.5 here may be tangential, since that provision only relates to the substantial repair or replacement of nonconforming structures that have been damaged "by fire, accident, or other causes." Bylaws § 7.1.1.5. Such a provision is common in municipal zoning regulations, since the starting premise in any discussion of nonconformities is that "municipalities may . . . prohibit expansion and undue perpetuation of nonconformities." 24 V.S.A. § 4412(7)(A).

Municipalities are authorized under § 4412(7)(A) to allow for the repair or replacement of nonconforming structures when damaged by fire or other calamity, such as the Town here has done in Bylaws § 7.1.1.5, but such provisions have not been interpreted as authorizing

10

replacement without a permit. See Town of Shelburne v. Carpenter, 155 Vt. 126, 128 (1990) (explaining that a zoning permit may authorize the replacement of a nonconforming porch with an enclosed addition, but only within the same dimensions of the pre-existing, nonconforming porch).

Since Hale Mountain has not provided evidence that the trap-house pad and trap-field pavilion were damaged by a sudden catastrophe, the replacement of these structures does not fall under the domain of Bylaws § 7.1.1.5. Nonetheless, we know of no exemption from the permit requirement of Bylaws § 8.1.1 for the replacement of structures and therefore conclude that a permit is required for these replacement structures as a matter of law.

The improvements made in 1992 at the property used by the Beagles (listed above as improvements 10–13) also require a permit under § 8.1.1. In order to facilitate the hosting of beagle-related events, the Club permitted the Beagles to improve their site by removing red pines, constructing rabbit pens, extending a culvert, and installing a portable toilet. These site improvements constitute land development requiring a zoning permit. Although the record indicates that the Beagles have ceased using the property, suggesting that these structures will ultimately be removed, the removal of structures also constitutes land development requiring a permit. To the extent that these structures have been removed, we conclude that no retroactive permit is necessary.

With respect to the replacement garage Hale Mountain erected in 1998 (listed above as improvement 14), the record indicates that Hale Mountain obtained a permit prior to construction. The unappealed permit granted by the Zoning Administrator on July 2, 1998, now binds the parties. In re Ashline, 2003 VT 30 ¶ 10, 175 Vt. 203. The Court has found no evidence in the record that the permit has been violated, therefore concluding that Hale Mountain acted in accordance with the Bylaws in constructing the 1998 garage.

Using portable trap machines, purchasing new five-stand trap machines, and conducting trap shooting on Sundays (listed above as improvements 15–17) does not constitute land development requiring a permit under § 8.1.1. These are merely uses of the lot. As noted above, allegations that the Club increased use without securing zoning permits are now precluded from adjudication in this appeal because the former Environmental Board found that the level of activity and use at the Club has not increased or changed since 1970. These uses are allowed to continue at their current level without a zoning permit. Bylaws § 7.1.1.

11

Lastly, we address whether the 1991 clearing of vegetation on the rifle range to approximately 437 feet and the installation of a berm around three sides of the pistol range during the mid-1990s (listed above as improvements 18 and 19) constitute land development requiring a permit under § 8.1.1. These are perhaps the most difficult issues to discern in the record currently before us. However, even when viewing the vegetation-clearing activities in a light most favorable to Appellants, we cannot distinguish these activities from customary maintenance, particularly when a use is maintained over the course of forty-plus years. In this regard, the Environmental Board determined that the vegetation within the rifle range was more properly identified as "routine maintenance" and not substantial enough to require permit review. In re Hale Mountain Fish & Game Club, Inc., Decl. Ruling # 435, Supplemental Findings of Fact & Conclusions of Law, at 3–4 (Vt. Envtl. Bd. Feb. 26, 2008).

When interpreting zoning ordinances, it is our duty "to avoid absurd and illogical results . . . in favor of [a] reasonable construction." Fraser v. Sleeper, 2007 VT 78, ¶ 12, 182 Vt. 206. Requiring a zoning permit under § 8.1.1 before all land development, no matter how minor or inconsequential, appears to the Court to be an absurd result that contradicts the Bylaws' drafters' intent. A more reasonable interpretation distinguishes routine maintenance from land development that requires a zoning permit.

Establishing the berms on three sides of the rifle range does not, however, fall into the category of reasonable maintenance. The record before us, even when viewed in a light most favorable to the Club, only shows these earthen berm structures to be additions to the Club. While their installation may have been to dampen noise from the range, thereby having an altruistic purpose, they nonetheless represent "construction" and "excavating" and therefore constitute land development, which represents the definitional trigger for the permit requirement of Bylaws § 8.1.1

In summary, we conclude that Hale Mountain must obtain a zoning permit under § 8.1.1 for improvements that constitute land development. We therefore **GRANT** Neighbors summary judgment on improvements 1–13, and 19. However, we **GRANT** Hale Mountain summary judgment on improvements 14–18 because the record indicates that Hale Mountain secured a zoning permit for improvement 14, and improvements 15–18 did do not constitute land development.

12

Lastly, while not specifically briefed by the parties, the Court wonders why the enforcement request that is the subject of the second appeal proceedings need be maintained. There has been no suggestion that the second appeal concerns any enforcement or permit compliance facts or standards, beyond those addressed in the first appeal, all of which have been addressed above. We therefore conclude that dismissal of Docket No. 259-12-05 Vtec is warranted.

The Court notes that Neighbors have requested in their motion that a hearing be held to demonstrate the public health hazards resulting from the continued deposition of lead ammunition throughout the Club's property. While we are sensitive to the potentially serious health risks associated with groundwater contamination from lead, the Court is unable to determine how the Bylaws provide the jurisdictional authority to address this allegedly serious health risk. Without that jurisdictional authority in these proceedings, it would be improper to hear such evidence and render what could only constitute an advisory opinion. In re 232511 Investments, 2006 VT 27, ¶ 19, 179 Vt. 409.

## Conclusion

For all the reasons more fully discussed above, we **GRANT** Hale Mountain summary judgment that the statute of limitations bars the enforcement of any violations occurring on or before May 24, 1989, and that Neighbors are precluded from bringing violations predicated on an alleged change in use. We also **GRANT** Hale Mountain summary judgment as to the improvements enumerated in Appellants' paragraphs No. 14–18 because no additional permit is required to achieve compliance with the Bylaws.

We **GRANT** Neighbors summary judgment as to the improvements enumerated in paragraphs No. 1–13 and 19, concluding that these activities constitute land development that requires a permit under Bylaws § 8.1.1.

We **DISMISS** Docket No. 259-12-05 Vtec as duplicative of the zoning enforcement allegations contained in Docket No. 149-8-04 Vtec. In that regard, we **AFFIRM** the December 2, 2005 decision of the Town of Shaftsbury Zoning Board of Adjustment to dismiss Neighbors' second demand that the Zoning Administrator commence enforcement proceedings. Lastly, we decline Neighbors' request that we determine whether the deposition of lead shot or shells constitutes a public health hazard, since the Bylaws provide no jurisdictional authority for this Court to consider such claims.

A Judgment Order accompanies this Decision. This completes the current proceedings before this Court in these two Dockets.

Done at Berlin, Vermont, this 15th day of December 2009.

_____
Thomas S. Durkin, Environmental Judge